## BAILEY *v.* HOLDEN AND OTHERS.

### [IN CHANCERY.]　.

### *Chancery.　Practice.*

C., having purchased a piece of land, gave P. a mortgage thereon for $500, and one to W. for $750, which W. subsequently assigned to P., by whom it was discharged of record. C. conveyed a part of the land to J., upon condition that J. should pay those mortgages, or $1,297 thereof. J. mortgaged the land to S. for $500, and afterward died, having paid large sums upon the mortgage to S., which had become the property of H., and having, by the hand of H., paid the whole of the mortgage to P., which had become the property of E. S. R., J's executor, being duly licensed, conveyed the land by deed containing the usual covenants of an administrator's deed, to B., who, by deed of warranty, conveyed it to B. S. In the meantime C. had conveyed the remainder of the land to M. W., who had conveyed it to G. P. Affairs being in this posture, H. brought a petition against R., B. S., M. W., and G. P., but not against B., to foreclose the mortgage to S. and the mortgage to P., alleging that the former had not been paid, and that there was a large sum due on the latter, upon which the said defendants, in collusion against B., procured and permitted a decree to be entered, without the production of the notes or securities, by which it was decreed that the said defendants should pay $1,000 and interest, or be foreclosed, all parties to that proceeding then well knowing that the note to P. had been paid. M. W. and G. P. thereupon brought a bill against B. S., setting forth said several conveyances, and said petition, and the proceedings thereon, alleging that they had been compelled to pay said decree, and praying that B. S. be decreed to repay to them, or be foreclosed ; and B. was vouched in to defend. B. thereupon filed this bill against H., R., M. W., B. S., and G. P., setting up the foregoing facts, and praying for a surrender of the note to P., for further assurance as to the security therefor, for a clear title as to that mortgage, for an accounting as to the sum due on the mortgage to S., for permission to redeem as to that, and for payment from R. of such sum as the orator should be decreed to pay, so to redeem. Defendants demurred for want of equity. *Held,* that B. was not bound, for his own security, to enter and defend the suit, to the defense of which he was vouched, where it was doubtful whether he could avail himself of all his rights by way of answer ; but that he was entitled to the relief sought upon an original bill.
Upon announcement of the decision, the defendants asked leave to withdraw the demurrer, and make answer. *Held,* that as the defendants might have traversed the sufficiency in law of the allegations of the bill, by way of answer, and had elected to go to the court of last resort on the demurrer, the request could not be granted.

APPEAL from the Court of Chancery. The bill alleged, that on October 12, 1860, Luther Poland conveyed to Thomas N. Courser, a piece of land in Montpelier, lying on the easterly and the westerly sides of the road leading along the north branch

of Onion River; that on the same day Courser and his wife, mortgaged said land to Luke P. Poland, to secure the payment of a note of that date, for $500, and to Zenas Wood, to secure the payment of a note for $750, and that said last-mentioned note and mortgage, were subsequently assigned to said Luke P. Poland, and the mortgage by him discharged of record; that on the 15th of January, 1864, said Courser conveyed to Lucinda Jones, since deceased, that portion of said land lying on the westerly side of said road, upon condition that she pay said two mortgages, and save said Courser harmless therefrom, to the amount of $1,297; that on the same day, said Jones mortgaged the land thus conveyed to her, to Enos Stiles, to secure the payment of a note of that date for $500; that said Jones died testate on July 14, 1869, and that her will was duly probated, and F. V. Randall duly appointed executor thereof; that on March 29, 1870, the Probate Court duly licensed said Randall to sell all the real estate of said testatrix, and that pursuant thereto said Randall did, on November 23, 1870, sell and convey to the orator, by a deed containing the usual covenant of an executor's or administrator's deed, the land so as aforesaid conveyed to the said testatrix; that the orator, on February 3, 1871, by his warranty deed of that date, conveyed to Bart. S. Scribner the land thus conveyed to him; that said Courser, on April 13, 1868, conveyed the land on the easterly side of said road to Medad Wright, and that Wright, on the 17th of April, 1871, conveyed the same to Grovener V. Paine; that said five-hundred-dollar note to Luke P. Poland became the property of one Edwin Shattuck, and was paid to him by the said Jones in her lifetime, to wit: on August 22, 1864, by the hand of Moses Holden; that the said Stiles note and mortgage became the property of said Holden about September 11, 1871, and that said Jones, in her lifetime, at various times paid divers large sums of money upon said last-mentioned note, which said sums were endorsed thereon when the same was transferred to the said Holden; that at the March Term, 1873, of the Washington County Court of Chancery, said Holden brought a petition against said Randall, executor as

aforesaid, and said Scribner, Wright, and Paine, but not against the orator, to foreclose the said Stiles mortgage, alleging that the note thereby secured had not been paid, and also to foreclose said mortgage from said Courser and wife to Luke P. Poland, alleging that the same had been assigned to him, the said Holden, and that there was a large sum due thereon; that such proceedings were therein had that at the September Term, 1874, of said court, a decree was entered that the defendants therein pay to the petitioner therein, on or before September 1, 1875, the sum of $1,000, with interest thereon from September 1, 1874; that said Holden brought said petition, well knowing that said note secured by the Poland mortgage had been fully paid, and that the parties to said cause, well-knowing that said last-mentioned note had been paid, consented to said decree, and procured and permitted the same to be made, without the production and filing in Court of the notes and securities on which said petition was brought, and in collusion against the orator; that said Wright and Paine, at the September Term, 1875, of said court, brought a bill of complaint against said Scribner, setting forth said several conveyances of said land, and the said Holden's petition of foreclosure, and the proceedings thereon, and that said Wright had been compelled to pay, and had paid said Holden's decree, and praying that said Scribner be decreed to pay to them, the said Wright and Paine, or to one of them, the whole sum so paid upon said decree, with interest and costs, or be forever foreclosed, and that said bill of complaint was still pending, and that the orator had been vouched in by said Scribner to defend the same.

*Prayer*, that said Holden be decreed to deliver the said Poland note to the orator, and to make further assurance to the orator in respect to the mortgage securing the same; that the orator and those claiming under him be declared entitled to the premises conveyed to him as aforesaid, freed from said last-mentioned mortgage and said decree of foreclosure; that an account be taken of the amount due on said Stiles mortgage, and the orator permitted to redeem the same; and that said Randall, executor as aforesaid, be decreed to pay the orator from the estate of said

testatrix, or from his own funds, such sum as the orator should be decreed to pay, to redeem the premises conveyed to him as aforesaid, with interest and costs.

Demurrer to the bill for want of equity. Demurrer overruled, decree for orator, according to prayer of the bill, and appeal by defendants, March Term, 1877.

*Gleason & Field,* for the defendants.

The orator was not a proper party to the petition for foreclosure, brought by Holden against Randall and others. He had no interest in nor possession of the land. Hence he cannot attack or modify the decree therein obtained. *Soule* v. *Albee,* 31 Vt. 142 ; *Shotwell* v. *Taliaferro,* 25 Miss. 105 ; *Barton* v. *Kingsbury,* 43 Vt. 640.

The decree in favor of Holden was made in open court by agreement ; all parties being represented ; and it is good between those parties.

By paying within the time limited by the decree, Wright redeemed the premises, and thereby the decree was vacated. The most that Wright can claim is to be subrogated to Holden's rights. Bailey not having been made a party by Holden, can, if entitled to be made a party, be joined with Scribner, and make defence against Wright in the petition now pending against Scribner. *Bullard* v. *Leach,* 27 Vt. 491 ; *Wheeler* v. *Willard,* 44 Vt. 640 ; *Hubbard* v. *Wood,* Washington Co. Supreme Court, Aug. Term, 1876.

If it be conceded that Wright, by paying the amount of the decree within the time limited, vacated the decree, it follows that Holden has now no interest in the premises, which in equity is vested in Wright. But he can have no greater claim than Holden had ; and if it be true that Wright, Paine and the other defendants consented to the decree in collusion against the orator, it may be a reason why Wright cannot recover at all against Scribner or the orator. But in no court can Wright recover a greater sum than was due on the mortgage. It follows that the orator has not been affected by the foreclosure complained of.

A court of equity cannot grant the prayers of the bill as against Holden.

*Fifield, Pitkin & Porter*, for the orator.

The Poland mortgage was extinguished by the payment of the note thereby secured. The defendant Holden, knowing that that mortgage had been extinguished, fraudulently set it up, with the Stiles mortgage, in his petition for a foreclosure, and obtained a decree thereupon. The orator, by reason of his covenants in his deed to Scribner, is in a position to be affected by that fraud. Particular persons must not transact *mala fide* in respect to third parties who stand in such a position as to be affected by the consequences of their transactions, and, if they do, equity will relieve. *Chesterfield* v. *Janssen*, 2 Ves. 125 ; Kerr Fraud, 195 ; 1 Story Eq. Jurisp. s. 333.

A decree obtained by fraud binds no court, and the fraud may be alleged in a collateral proceeding. Kerr Fraud, 293.

The opinion of the court was delivered by

BARRETT, J. L. P. Poland conveyed to Courser the premises in question in 1860, situate on opposite sides of a highway, Courser on the same day mortgaging the same back to Poland to secure a note for $500. On the same day he mortgaged to Wood to secure a note for $750, which note and mortgage were afterwards assigned to Poland. In January, 1864, Courser deeded to Lucinda Jones the part of the premises west of the highway, by deed conditioned to pay said mortgages up to $1297. On the same day she mortgaged to Stiles to secure a note for $500. She died in 1869. Randall, as her executor, sold, in 1870, that property to Bailey, the orator, warranting against said Jones and himself. In 1871, Bailey conveyed the same to Scribner by deed of warranty. On April 13, 1868, Courser deeded to Wright the parcel on the east side of the highway, and on the 17th of April, 1871, Wright conveyed to Paine. The $500 note to L. P. Poland became the property of Shattuck, and was paid to him the 22d August, 1864, by Jones. The note of Jones to Stiles for $500 be-

came the property of Moses Holden on which she paid large sums that were endorsed on the note. Holden brought a bill to foreclose, March Term, 1873, against Randall, Scribner, Wright and Paine, setting forth the 'mortgage and note to Poland as belonging to himself, and also the mortgage and note to Stiles as belonging to himself. A decree was entered for $1000, as the sum due, to be paid by Sept. 1, 1875.

These facts are set forth in the present bill, and it is further alleged that Holden knew that the $500 note to Poland had been paid, and that the other parties to the cause knew it; that said decree was procured without producing and filing said notes, and that the said parties consented to that decree in collusion against Bailey, the orator in the present bill. This bill sets forth that Wright and Paine brought their bill into the September Term, 1875, against Scribner, stating said several conveyances before named and said suit and decree of Holden, and that Wright had been compelled to pay, and had paid, the said decree of Holden with interest; and praying that Scribner be decreed to repay the same, or be foreclosed of his title to the property conveyed to him by the orator Bailey, that said bill of Wright and Paine was pending, and that Bailey had been cited by Scribner to defend the same.

Bailey, the orator, by his warranty to Scribner, is subjected to the consequences of any established and enforced incumbrance resting on the property when the warranty was made. The decree in favor of Holden establishes the incumbrance of $1,000 against the defendants in the foreclosure by Holden, of whom Scribner was one. That sum was computed for $500 of it on the note and mortgage to L. P. Poland, the rest of it on the note of Lucinda Jones to Stiles.

The demurrer admits that the note to Poland had been paid, and was embraced in that decree of Holden, by collusion of himself and the defendants in Holden's foreclosure suit. It also admits that payments had been made prior to that suit on the note of Jones to Stiles.

Two of the parties to that collusion, viz., Wright and Paine, have brought their bill against Scribner to enforce that decree

against the property embraced in the mortgage of Courser to Poland, securing the $500 note to Poland, and the mortgage of Jones to Stiles securing the $500 note described in said mortgage, both of which were embraced in the decree of Holden for the $1,000. Scribner has called on Bailey to defend the suit of Wright and Paine against him. Bailey is not made party to that suit ; but he is brought to face the peril in which he is put by that Holden decree, by reason of his covenant of warranty to Scribner. He is entitled to have the title in Scribner cleared of that false and undue burden resting upon it, to his own peril, as the purpose and result of the collusion by which the Poland note was embraced in Holden's decree. The relief from such peril is a proper subject for equity cognizance upon original bill, as the matter is set forth and confessed in this case. It is objected that it is available in defence to the suit of Wright and Paine against Scribner. Bailey is not party to that suit. All the parties to it were in conspiracy against Bailey, in begetting the decree which Scribner now calls on him to defend against. Perhaps the plaintiffs in that case, and perhaps the defendant, might, in the Court of Chancery, have got an order bringing in Bailey as defendant, but they have not done so, and he has no standing on the record till the parties to it cause him to have such standing. In the posture that the parties have assumed against him, Bailey is not bound to subordinate himself to proceedings instituted by and between them, as a means of securing himself against the perils in which they have wrongfully placed him. Moreover, if he should be made defendant with Scribner in the pending suit of Wright and Paine against Scribner, it is matter of question, at least, whether could avail himself, by answer, of all that he would be entitled to have accorded to him in the case stated in his bill. He is not to be subjected to the settling of that question at the expense and hazards of the litigation that would be invoked by the experiment. Nor is he to await a possible or probable action at law on his covenant, that might be brought by Scribner against him, in consequence of Scribner's having to answer the claim that Wright and Paine are making on the property. As against the peril to which he has been subjected, he is entitled to meet the band of conspira-

tors who have thus put him in jeopardy, upon a field, and ground, and with weapons chosen by himself, provided the law accords to him the right to do so ; and it is hardly becoming to them, or any of them, to skulk behind a technicality, that has nothing to do with the visiting upon them of the justice which is their due, unless it be to render the visitation of that justice doubtful and remote. We, therefore, do not trouble ourselves to speculate upon what might be Bailey's right and province of defence in a suit on his covenant by Scribner, the bringing of such suit being contingent on the caprice of Scribner, both as to time and occasion. Bailey is entitled to relief now, and by lawful means, from the peril of the wrongful acts against him of the parties to the pending suit of Wright and Paine against Scribner. Upon the facts confessed by the demurrer, Bailey is entitled to have the Poland note, and so much of Holden's decree as was made up of that note, declared to be of no validity or force as against him under his covenants in his deed to Scribner. As to Bailey, they are void, and of no effect as the ground of any claim or lien upon the land mortgaged to secure that note. The orator, Bailey, has the right to redeem the premises from the first incumbrance resting upon them on the score of said note and mortgage by Lucinda Jones to Stiles. The said decree of Holden does not conclude him as to the amount of that incumbrance. The amount unpaid by, or in behalf of said Jones on that note measures the incumbrance, which, as against the orator, is chargeable upon the property by reason of the mortgage given to secure it. That amount is to be ascertained by reference to a master, unaffected by the said decree of Holden, and Bailey is to be allowed to pay that sum, and the costs of the pending suit of Wright and Paine against Scribner, taxed as for a decree *pro confesso* at the term when the same was entered in court, and for no more than that term, by a time to be limited by the Court of Chancery, and upon such payment all liability of said Bailey by reason of any claim or lien upon said property conveyed by him to said Scribner, created and at any time existing by the force and effect of said notes and mortgages, and of said decree in favor of said Holden, is considered and adjudged, and is to be decreed to be, by such pay-

ment, fully satisfied and discharged as against said Bailey. And the defendants in this cause are to be perpetually enjoined from enforcing, or attempting to enforce any claim against him, his heirs, executors, or administrators, in respect of the premises.

And the orator is to be allowed his costs of this suit.

The decree of the Court of Chancery is affirmed, and a mandate is sent to that court according to the views above expressed.

Upon the opinion being read and the decision announced, counsel for defendants asked leave to withdraw the demurrer, and to be permitted to make answer, and defend on the facts on reasonable terms. This would require that the decree should be reversed, and the cause remanded, to be proceeded with *de novo.* The application was denied. It was deemed unjust to the orator to subject him to the protraction of the litigation, after it had gone to a final decision in the Supreme Court, upon such defence as the defendants elected to make, and upon their appeal from a decree against them in the Court of Chancery. It was their right, in accordance with rule and usage, in an answer as to matters of fact, to have traversed the sufficiency in law of the facts alleged in the bill, as by demurrer, and to the same effect. Having chosen to rest their defence upon the facts confessed by the demurrer, and carried the experiment to the last extremity, it was regarded unwarrantable to allow the litigation and the decision upon it to go for nothing, and permit the cause to be put back as it was upon the filing of the bill, when the only reason assigned for it, was, that "defendants' solicitors had erred in their judgment of the law."