## CHARLES G. LORING & another *vs.* HARRIET P. BLAKE & others.

A testatrix, in her will, after directing her estate to be divided into as many equal portions as there should be children of her, or issue of deceased children, living at the time of her death, devised the same to trustees, with directions to set apart as many of these portions as there should be children of her who survived her, and hold each of the same during the life of the child for whom it had been set apart, and that of any husband or wife such child might have, in trust, to pay the net income thereof to such child during life; and, upon the death of any child leaving a husband or wife, then to pay the net income thereof to such husband or wife during life; and upon the death of any child without leaving a husband or wife, or upon the subsequent death of such husband or wife, then to hold the portion of such child to the use of his or her children, their heirs, &c., or, if there should be no issue of such child living, or any issue of such issue, then to such persons as such child should appoint by will; or, in default of appointment, to such persons as would have been heirs at law of the testatrix, if she had then died intestate. *Held*, that this disposition was not void as being too remote and tending to create a perpetuity.

A testator, the husband of the testatrix above referred to, in his will, devised his estate to trustees, in trust, to pay the net income thereof to his widow during her widowhood, with a different provision in case of her marrying again; and during her life to pay to any of his children, or the issue of them, such sums as his widow should in writing direct, or to pay the same to trustees for the benefit of any such child and issue, upon such trusts and conditions, and for such purposes, as she should in writing direct; and, upon her decease, to convey all his estate, which should remain, to his children, and the issue of any, who should be living at the time of her death, or to such of them as she should direct, or to

trustees for their benefit as aforesaid, in such proportions as she should by will direct; or, in default of such direction, then to the use of all his children who might be living at the time of her death, and the issue of any deceased child. His widow died, leaving several children by him, and a will directing the residue of her husband's estate to be divided into as many equal portions as there should be children of him, or issue of deceased children living at the time of her death, and these portions to be severally set apart for the benefit of each of them respectively; and the share of each child to be held in trust for its benefit, and the benefit of the husband or wife of such child, upon the same trusts and for the same purposes as are above declared concerning her estate, with this exception only, that, in the ultimate contingency provided for, the portion of such child should go to such persons as would have been heirs at law of the testator. *Held,* that the widow had no power to include, in her appointment, the issue of children who might be born after her death, but that her will was a valid appointment to children of the testator, and issue then living of deceased children, to take in equal shares, which shares were to be placed in trust for their benefit; and that such appointees would upon her death take the entire interest and title to their respective shares.

BILL IN EQUITY by trustees under the will of Joshua Blake, and the trustee under the will of Sally Blake, widow of said Joshua, to obtain instructions as to their duty upon the following facts, which were agreed by all the parties :

Joshua Blake died in December 1843, leaving a will by which he devised the residue of his estate to trustees, in trust, to invest the same as therein provided, and during the life of his wife Sally Blake, and so long as she should continue his widow, to pay the net income thereof to her, for her own sole use; with a different provision in case she should marry again :

" And upon this further trust, at any time during the life of the said Sally, to convey, assign, deliver or pay to any or either of my children, or to the issue of any or either of them, such parts or portions of said estates, or such sum or sums of money, as the said Sally shall at any time or times, in writing by her signed in the presence of two or more competent or disinterested witnesses, direct and appoint; or to convey, assign, and deliver or pay the same to trustees for the benefit of any such child or children and issue, upon such trusts and conditions, and for such purposes, as the said Sally shall in like manner direct and appoint;" " and upon this further trust, upon the decease of the said Sally, in like manner to convey, assign and deliver all and singular the said estate, or such part thereof as shall not have been conveyed, assigned, delivered and paid, as aforesaid, to and among my children, and the issue of any, who shall be living at

the time of her death; or to and among such of them as she shall direct, or to trustees for their benefit as aforesaid, in such proportion as she shall by her last will and testament, or any writing in the nature of a last will and testament, direct and appoint;" "and in default of any such direction and appointment, or in case the same shall not embrace the whole of said estate," "then in trust, to hold the same, or such part thereof as shall not be so embraced in such direction and appointment, to the use of all my children who may be living at the time of her decease, and the issue of any deceased child or children, to take by representation, share and share alike; first deducting from the share of each of my said children, or of the representatives of either of them, all and singular any sum or sums of money I may have advanced to him or her, during my life, and which shall appear charged against such child."

Sally Blake was not married again, and died in May 1863, seised and possessed of estates separate from those of said Joshua, and leaving a will which contained the following provisions:

" I direct that the whole of the residue of my estate be divided into as many equal portions as there shall be children of mine or the issue of any living at the time of my decease ; the children of any deceased child to be considered as representing the parent."

She then devised to trustees " as many of such portions as there shall be children of mine who shall survive me, to be severally set apart for the benefit of each of them respectively; each of said shares to be holden by the said trustees," " to their own use, during the life of the child for whom it shall thus be set apart, and that of any present or future husband or wife that she or he may have : but, in trust, nevertheless, during his or her life and that of any such husband or wife, to keep the said share invested in good and proper real or personal estate yielding ncome, and, after deducting" expenses and charges, " to pay over the residue thereof to him or her, for his or her separate use," " or to appropriate and apply the same, or such portion of the same as they think best, to the support and maintenance of

such child, and his or her family, in such manner, as they, the trustees, shall think best, if the trustees for the time being, or a majority of them, or the survivor of them, shall, in the exercise of a sound discretion, deem it expedient so to do; and any portion which the said trustees or trustee shall not see fit to pay over to such child, or appropriate to the maintenance and support of himself or his family, shall be added to the principal fund limited over upon his death, as herein provided; and upon the death of any child, leaving a husband or wife, then, in like manner during his or her lifetime, to collect and pay over said income to him or her, or to appropriate the same or any portion of it as aforesaid to the support and maintenance of him or her, and the children of such deceased child, if any; and upon the decease of any of my children without a husband or wife, or upon the subsequent decease of such husband or wife, to hold the portion of such child, and any income not so paid or appropriated, to the use of his or her children, their heirs, executors, administrators and assigns, in equal shares, the issue of any deceased child or children to take by right of representation; and if, at the decease of any child, his or her husband or wife, as the case may be, there should be no issue of such child living, nor the issue of any, then I give and devise his or her portion, and all income which may have accrued thereupon, to such person or persons, upon such trusts or limitations as such deceased child shall have appointed or directed by his or her last will and testament;"

" and in default of any such will or appointment, then I give and devise his or her portion and income to such persons as would have been my heirs at law had I then died intestate. If any of my children shall decease before me, leaving issue which shall survive me, I give and devise to such issue the share of my estate to the benefit of which its parent would have been entitled if living."

Then, after reciting the provisions of her husband's will above referred to and quoted, her will proceeded thus:

" I direct and appoint that the whole residue of my husband's estates, held in trust at the time of my decease, shall be divided into as many equal portions as there shall be children of his, or

the issue of any living at the time of my decease, the issue of any deceased child representing its parent, and which portions shall be severally set apart for the benefit of each of them respectively. And I appoint and direct that the share of each child shall be held and invested in trust for its benefit, and for the benefit of the husband or wife of such child, and upon the same trusts and for the same purposes as are hereinbefore declared of and concerning the portions of my own estate hereinbefore devised in trust for the benefit of my children, with this exception only, that in the event of the decease of any child, and the husband or wife of such child, without issue, and intestate, his or her portion shall descend to such persons as would have been the heirs at law of my said husband if he had then deceased. If either of such children shall decease before me, leaving issue which shall survive me, the portion of such child shall be assigned and conveyed over to his or her child or children in equal shares, the issue of any deceased child to take its parent's share."

Her will then appointed certain persons as trustees to hold her husband's estate.

At the time of the death of Joshua Blake, and also of the death of Sally Blake, there were nine children living, none having died between the dates of the death of said Joshua and of said Sally. But since said Sally's death, one son, Charles S. Blake, has died, leaving a widow and two daughters; and one daughter, Sarah C. B. Austin, has died, leaving a husband and two daughters.

The various parties in interest were all made respondents. The case was reserved, by *Wells,* J., for the determination of the full court.

*F. C. Loring,* for the complainants. Under the will of Mr. Blake, his children took remainders in fee to his estate, subject to the contingency of their surviving their mother. *Hubbard* v. *Rawson,* 4 Gray, 242. *Winslow* v. *Goodwin,* 7 Met. 376. *Holm* v. *Low,* 4 Met. 200. *Olney* v. *Hull,* 21 Pick. 311. They were also subject to the further contingency that they might be divested in whole or in part by the exercise of the power given to Mrs.

Blake.  *Blanchard* v. *Blanchard*, 1 Allen, 223.  *Skey* v. *Barnes*
3 Meriv. 335.  This power was not a general one, and she
exceeded it in undertaking to make provision for wives and hus-
bands ; and in directing that on the decease of a child its share
should go to its issue, or, if none, according to the will of the
deceased child, or, in default of issue or will, to Mr. Blake's
heirs.  Where a power is exceeded, the exercise is good so far
as authorized, and void for the excess.  Sugden on Powers, (8th
ed.) 541.  The attempted exercise of power by Mrs. Blake raises
no question of remoteness therefore, because the only element
on which it could be raised is wanting, inasmuch as the pro-
vision for wives and husbands is clearly void.

Under the will of Mrs. Blake, the provision for husbands and
wives is void for remoteness.  *Sears* v. *Russell*, 8 Gray, 99.
That provision and the subsequent limitation over therefore fail ;
but the previous trust for the lives of the children remains good.
She therefore died intestate, as to the remainder after the life
estates.

*F. P. Goulding*, for the minor children of Charles S. Blake.

*W. S. Leland*, for one of the children, and for the widow of
Charles S. Blake, cited, to the point that the appointments were
void for remoteness, *Odell* v. *Odell*, 10 Allen, 4, and cases cited ;
*Cadell* v. *Palmer*, 7 Bligh, (N. S.) 202 ;  *S. C.* 1 Cl. & Fin. 372 ;
that it was therefore void for all purposes, *Bristow* v. *Warde*,
2 Ves. Jr 336, note 1, and authorities cited ; that in the construc-
tion of powers the intention of the testator must prevail, *Capa.*
v. *McMillan*, 8 Porter, 197, 205 ; *Doe* v. *Thorley*, 10 East, 438 ;
Sugden on Powers, 639 ; 4 Kent Com. (6th ed.) 319, 327, 345 ;
that objects not contemplated by the testator cannot be em-
braced in the execution of a power, Sugden on Powers, 664 ,
*Varrell* v. *Wendell*, 20 N. H. 431 ; that the trusts, limitations and
purposes of Mrs. Blake are so confused as to be void, 2 Wil-
liams on Executors, (5th An.. ed.) 1074, 1125 ; 4 Kent Com.
346, and note ; *Greenwood* v. *Roberts*, 15 Beav. 92 ; *Blagrove*
v. *Hancock*, 16 Sim. 371 ; *Dungannon* v. *Smith*, 12 Cl. & Fin.
546.

*W. Allen, Jr.*, for one of the children, cited, to the point that

the appointments under the will of Joshua Blake were in part void, *Routledge* v. *Dorril*, 2 Ves. Jr. 357 ; *Sears* v. *Russell*, 8 Gray, 98, 99 ; Sugden on Powers, 375, 394, 666–667 ; that the appointments for life should not take effect without the subsequent appointments, Sugden on Powers, 500 ; *Varrell* v. *Wendell*, 20 N. H. 431.

WELLS, J.   The only question which seems now to arise, in regard to the estate of Mrs. Blake, is whether the limitations she has provided are void for remoteness.   In order to give all those provisions effect, may it require, in any contingency, that the ultimate disposition of the estate should remain in suspense for a period beyond lives in being and twenty-one years ?

The trustees are to hold during the life of each child, and of any surviving husband or wife.   Upon the decease of any child, " without a husband or wife, or upon the subsequent decease of such husband or wife," the trustees are " to hold the portion of such child " " to the use of his or her children, their heirs," &c. ; and " if, at the decease of any child, his or her husband or wife, as the case may be, there should be no issue of such child living," then to such person as such child should appoint by testamentary writing ; or, in default of appointment, " to such persons as would have been my heirs at law had I then died intestate."

It was possible that a child of Mrs. Blake might marry a person not in being at the time of her decease ; and that such person might be the survivor of the marriage.   In that case, a limitation of her estate, not to take effect until after the decease of such unborn person, would be in violation of the rule against perpetuities ; because it would not be supported by the definite measure of a life or lives in being and twenty-one years. By Mrs. Blake's will the ultimate enjoyment and possession of the estate is thus postponed.   The rule however regards, not the possession, but the title or absolute right.   If that vest within the prescribed period, the rule is satisfied.   It is necessary therefore to measure with precision the force and effect of the terms by which the limitation of the ultimate interest is made.

It will be seen that while there is an alternative as to the tim of enjoyment, depending upon whether a husband or wife shall survive the child of Mrs. Blake, this alternative affects only the time of such enjoyment or possession. In expressing the inter-est to be transmitted, and the objects who are to receive it, the same language is made applicable to either alternative. " The portion of each child " is to be held " to the use of his or her children, their heirs," &c. Applied to one alternative, this can only refer to children who should be living at the decease of any child of Mrs. Blake, and must embrace all the children of such parent. There is nothing to require a different application of the term " his or her children " in the other alternative, nor to show that the same identical persons were not intended in the one case as in the other; nothing to indicate an intention to make the interests of her grandchildren contingent upon their surviving such husbands or wives of her children. The enjoy-ment is postponed to enable the surviving husband or wife to receive the income during life; but the title, the absolute interest in remainder, is fixed at the decease of the child of Mrs. Sally Blake. This construction is, at least, in accordance with the manifest intent of the testatrix, and is effectual to accomplish the purpose she had in view; while the other construction, mak-ing the ultimate interests of the grandchildren await the decease of a surviving husband or wife, and remain contingent mean-while, would defeat that purpose, by creating a perpetuity which the law would not sustain. In such a case, the court is bound to adopt that construction which will sustain the will and effectuate the objects of the testator.

Upon this interpretation of Mrs. Blake's will, the whole in-terest in each share of her estate will become vested absolutely at the decease of the child for whose benefit the share was set apart. If there are issue living, it vests in such issue, subject to a life charge for the benefit of a surviving husband or wife. If no issue, then it vests at once, either by appointment under the power, or in the persons who would stand in the relation of heirs to Mrs. Blake, if she had then died intestate. All these interests will therefore be supported by a life in being, namely, the life

of the child of Mrs. Blake, for whom the share is set apart.
The limitation of a life interest to a surviving husband or wife,
who may not have been born at the time of Mrs. Blake's de-
cease, does not tend to make a perpetuity; because that interest,
although contingent during the life of the child of Mrs. Blake,
becomes vested at the death of such child; and the limitation
over, as we have already seen, is not at all dependent upon such
life interest, but itself also becomes vested absolutely at the same
time. 1 Jarman on Wills, (4th Am. ed.) 241, 265.

In executing the powers under the will of Joshua Blake, Mrs.
Blake makes the same limitations as in disposing of her own
estate, with the single difference of substituting heirs of Mr.
Blake instead of her own heirs, in case of the death of any child
without issue and intestate. Of course his estate must vest,
under such an execution of the powers, at the same time with
that of Mrs. Blake; namely, each share at the decease of the
child for whose benefit it was directed to be set apart; that is,
at the end of a life in being at the time of his decease. The
objection of remoteness is not applicable therefore to the dispo-
sition of his estate. The interpretation which we have adopted
frees the further consideration of the case entirely from difficulty
on this ground.

But surviving husbands and wives, to whom Mrs. Blake limits
an interest in the several shares appointed to the children, are
not objects of the powers which she is authorized to execute.
They cannot therefore take such interest by way of appoint-
ment. The range of objects extends only to children and such
issue as should be living at the decease of Mrs. Blake. The
limitation made by her extends to all issue of any child, living
at the decease of such child. But grandchildren, born after the
decease of Mrs. Blake, would be excluded from the range of
objects to which the powers applied, and could not take by
appointment.

It is urged, upon the one hand, that in so far as the exercise
of the power of appointment by Mrs. Blake is excessive, it is
merely void, and, being separable from that which is authorized
by the power, it may be rejected, leaving the rest to stand. On

the other hand, it is argued that the dispositions which Mrs.
Blake has made of her husband's estate are so blended together
the good with the bad, that it is impossible to separate them
that her arrangements all constitute one scheme, the various
parts of which are so inter-dependent that to reject a part and
sustain another part would more completely defeat her purposes
than it would to reject the whole; that even the life interests in
the children ought not to be sustained without the rest, because
the remainder of each share would, at the decease of the child
to whom it was appointed, become distributable, as unappointed
estate of Joshua Blake, among all his children; thus giving to
the longest livers of them an undue share of his estate, contrary
to the intent both of himself and of Mrs. Blake.

There certainly would seem to be no great difficulty in sepa-
rating that which is well executed by Mrs. Blake from that
which is unauthorized, by rejecting her provisions for surviving
husbands and wives, and also for such grandchildren or issue as
were not living at her decease. If the question were merely
between disappointing a part only of the objects of her favor,
and defeating altogether the direction she intended to give to
the estate at her disposal, we cannot doubt that it would be the
duty of the court to make the separation, and give effect to her
dispositions of the estate so far as they were well made in ac-
cordance with her power. Sugden on Powers, 503, 506–7. But
where the estate, in the absence of any direction by the donee
of the power, would be cast more nearly in the same manner
she has attempted to transmit it, than by giving effect to a part
only of her directions, it is difficult to say that such partial exe-
cution would accord with the intentions of the testatrix. The
will must stand upon the supposed intentions of the testatrix,
as well in the testamentary appointments as in the direct gifts
of her own estate. If the rejection of those parts which are un-
authorized will break up the general scheme or main purposes
of her dispositions, then it will operate to defeat and not to
effectuate the intentions of the testatrix, if the court sustain
such parts only as conform to her authority. Treating the
limitations contained in Mrs. Blake's will as appointments of

interests, by way of exercising her power to direct and appoin proportions or shares among the children of Mr. Blake and their issue, the rejection of that which is excessive must operate to defeat her intention, not only in respect to those provisions which fail, but in respect to the entire disposition of the estate.

But we are not satisfied that such is the character of these provisions, nor that they were so intended. By the will of Mr. Blake his estate was placed in trust. The trustees had but two directions in relation to the final disposition of property in their hands; first, to pay the income to Mrs. Sally Blake during her life ; second, to " convey, assign, deliver or pay " the principal to her appointees, or, in default of appointment, to his children. This would all be accomplished, and their trust terminated at Mrs. Blake's decease. They were clothed with no title nor authority to serve any postponed interests or subsequent limitations. If the nature of Mrs. Blake's appointments should require the property to be held in trust after her decease, it was to be by trustees of her appointment, to whom the trustees under the will of Mr. Blake were to " convey, assign and deliver," at her decease. Such part of his estate " as shall not be so embraced " in any direction or appointment by Mrs. Blake, and the whole, in default thereof, was to be held to the use equally of all his children living at the decease of Mrs. Blake, and the issue of any deceased, deducting advancements.

Mrs. Blake was clothed with a power of revocation and appointment to a larger class, embracing as well issue of children as children living at her decease ; or to a smaller class, being " such of them as she shall direct." Having these for her range of objects, her power was to " direct and appoint" the " proportions " in which the trustees under the will of her husband should " convey, assign and deliver" his estate to such of them as she should select, or to trustees for their benefit.

In addition to this power, the will of Mr. Blake contains another, to be exercised by Mrs. Blake in case she should determine to place any share in trust. By following back the reference indicated by the adjunct " as aforesaid," we find that the trust was to be for the benefit of the object selected to receive any

share or "proportion" of the estate, "upon such trusts and conditions and for such purposes as the said Sally shall in like manner, direct and appoint."

From the natural import of the terms, the inference would seem to be that the first of these provisions was intended to authorize Mrs. Blake merely to control and direct the distribution of the property itself — the substance of the estate — and not to limit qualified interests in it. Still the language may bear a construction that would warrant an appointment by assigning life interests to some and remainders to others among the proper objects of the power, provided such were the manifest intent and purpose of the testatrix in executing the power.

Turning then to the will of Mrs. Blake, we think it is apparent, from the form and language in which she proceeds to execute the powers, that she adopted the natural and limited purport of the one first referred to above; and that in prescribing the limitations of interests under the trust which she created she had reference to and was attempting to exercise, not that power, but the other, which authorized her to direct and appoint the trusts, conditions and purposes for which the property should be held by her trustees. Her execution is marked by a division corresponding to the two distinct powers confided to her.

First, she directs and appoints that the property be divided into equal shares, corresponding to the number of the children, excluding issue altogether, unless by representation of a deceased child; "which portions," she declares, "shall be severally set apart for the benefit of each of them respectively."

Second, she appoints and directs "that the share of each child shall be held and invested in trust," "upon the same trusts and for the same purposes" as are declared concerning her own estate.

Construing these two clauses by their own phraseology, without reference to the manner in which she disposes of her own estate, there would be little doubt that the first clause was intended to execute the power to direct and appoint the "proportions," and to select the objects for whose benefit they should be set apart; while the second had reference solely to the othe�\-

branch of the power, namely, to create a trust and direct the trusts, conditions and purposes thereof.  Her limitations of interests to parties other than appointees of shares cannot be sustained; because the trust is to be declared only "for the benefit of such" appointees; and her power, to appoint the trusts, conditions and purposes, cannot be used to change or enlarge the class of those who are to take as *cestuis que trust.*

It is equally impossible, as we have seen, that they should be sustained as appointments of "proportions" of Mr. Blake's estate. If the proposed beneficiaries were all within the range of objects designated by him, it might be proper to assume a construction of Mrs. Blake's will, in favor of her manifest general intent, that would give effect to her dispositions of the estate.  But such is not the case.  The range of objects, to which these remainders are limited, not only may include issue not living at Mrs. Blake's decease, but such after-born issue may alone be living to take, under the limitations thus made.  It seems to us clear, therefore, that the limitations to grandchildren generally cannot be treated as good appointments of "proportions" to grandchildren only who should be living at the decease of Mrs. Blake, without doing violence to the intent of the testatrix, and adopting a mere factitious construction.

The result at which we arrive is, that the power to select the objects, and to direct and appoint the proportions of Mr. Blake's estate to be conveyed, assigned and delivered to each, was fully and properly executed by Mrs. Blake : 1st, by selecting children only, and issue of deceased children, by representation, as objects ; 2d, by appointing equal shares to each, without deduction for advancements, and directing these shares to be "severally set apart for the benefit of each of them respectively;" 3d, by directing the several shares to be placed and held in trust. Upon the shares so apportioned and appointed, the will of Mr. Blake operated to vest in the several appointees the entire interest and title to their respective shares.

In the execution, by Mrs. Blake, of the other power, — to direct and appoint the trusts, conditions and purposes, upon which the shares should be held, — she could not divest nor limit

the interests of the appointees, nor deprive them of the fui. benefit thereof. She could impose conditions and declare purposes and trusts for the security and protection of the fund against loss, improvidence, alienation, anticipation of income, control or interference of husband, &c.; but the trust itself continues only during the life of each appointee, and might be terminated at any time, by the joint action of the trustees and the *cestui que trust.* Upon the decease of each child of Mr. Blake, the entire interest will pass to the heirs or devisees of such child, or be distributed under the statute. No right of dower attaches to real estate thus held in trust; but a surviving wife takes an interest in so much of the fund as consists of personal estate, in the same manner as if no trust had existed.

The interest of the surviving husband of Mrs. Austin, having been adjusted by indenture of the parties, need not be further considered.

As the entire interest is in the appointee as *cestui que trust* for life, with remainder absolute, the conversion of real property into personal, by the trustees, can give rise to no question. The property will pass according to its character in fact, as realty or personalty, at the time the descent is cast.

As the trust is terminated, so far as relates to the shares of the estate of Joshua Blake, held, under Mrs. Blake's appointments, for Charles S. Blake and Mrs. Austin, the parties now interested are entitled to a decree for the transfer of the property in accordance with the foregoing conclusions. The shares of Mrs. Blake's estate, held for the same children, will continue in trust, and the income be payable to the surviving husband and wife during the life of each, in accordance with the directions of Mrs. Blake's will.