JOHN C. GRAY & others, trustees, *vs.* JOHN M. WHITTEMORE & others.

Suffolk. March 26, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Devise and Legacy. Perpetuities. Dower. Trust,* Equitable conversion. *Husband and Wife. Words,* "Heirs," "Heirs at law."

If by the terms of a devise or legacy the estate or interest created must begin within the time prescribed by the rule against perpetuities it is not made invalid by the fact that it may extend beyond that period. Thus life estates given to the husbands and wives of the testator's children who respectively may survive them are valid; and so is a limitation to the issue of such of the testator's children as shall die leaving no husband or wife.

If a will provides that after life estates in the children of the testator the remainders shall go for life to any surviving husband or wife of a child of the testator and after the death of such husband or wife shall then and not before vest in the issue of such child of the testator or in default of such issue in his heirs, and also provides that upon the death of any of the testator's children without leaving a surviving husband or wife the remainder shall go to the issue of such child, this last named remainder is valid without regard to the question whether the remainder after the death of a surviving husband or wife is void under the rule against perpetuities, because the two remainders are limited upon wholly distinct and separate events, either of which, if it occurs, will exclude the existence of the other.

*Semble,* that a remainder which is intended by a testator to vest after a life estate in one of his children followed by a life estate in the surviving husband or wife of such child would be void under the rule against perpetuities, because the child in question might marry a person not in being at the time of the death of the testator and such person might be the survivor of the marriage and might not die until after the expiration of twenty-one years from the death of the testator's child.

A testator by his will gave a life estate to his wife with remainders to his children for life, and then in substance directed his trustees upon the death of any of his sons to pay such son's share of income to his widow, if any, during her widowhood; upon the death of any of his daughters to pay her share of income to her surviving husband, if any, for life; and upon the death of any of his children leaving no surviving widow or husband, or upon the death of any surviving husband or the death or marriage of any such widow, to pay or transfer a proportional share of the principal sum to the issue, if any, of his deceased son

or daughter, and in the case of default of such issue at the time of such decease or marriage to pay or transfer such share to the heirs at law of such deceased son or daughter. *Held*, that the words "in the case of default of such issue at the time of such decease or marriage" referred, not only to the death of a child unmarried or of a surviving husband or to the death or remarriage of a surviving wife, but also to the death of any child of the testator whether or not leaving a surviving husband or wife; that in case of those children of the testator who died leaving a husband or wife but no issue, the remainders in the heirs at law of the testator's children vested upon the respective deaths of those children, their enjoyment being postponed until the death of the surviving husband or the death or remarriage of the surviving wife; and that, in case of those children of the testator who died leaving issue and also a surviving husband or wife, the remainders in the issue vested either at the death of the testator or at the time of the death of each child, the right of present possession being postponed until the expiration of the intervening life estate, it being immaterial to determine whether the further remainders to the heirs at law of these children upon a failure of issue vested at either of those times or whether they were void under the rule against perpetuities.

In construing a provision in a will this court will adopt a construction which is effectual to accomplish the object which the testator had in view rather than one which will defeat his purpose by creating a perpetuity which the law will not sustain.

A widow is not entitled to dower in a vested remainder.

The heirs at law of a child of a testator, to whom the testator has made a devise in case of default of issue of such child at the time of such child's death, necessarily are to be determined at the time of the death of the child in question.

Where real and personal property are included in a single provision of a will by which the income is to be paid to beneficiaries for life and at the expiration of the life interests the trustees are to pay and transfer the whole property to the "heirs at law" of a certain person, if there is nothing in the will to show that the testator intended otherwise, the whole property will go to those who would inherit the real estate of the person in question.

The right of a surviving husband under Pub. Sts. c. 124, § 1, to the real estate of his wife in fee to the amount of $5,000 in case of her death without issue entitles him in this event to share to this amount in a devise to the heirs at law of his wife, unless a contrary intent is shown by the will, and the fact that the devise to the heirs at law of the wife is preceded by a life interest in the husband himself does not indicate such contrary intent.

A testator by his will gave a life estate to his wife with remainders to his children for life, and then in substance directed his trustees upon the death of any of his sons to pay such son's share of income to his widow, if any, during her widowhood; upon the death of any of his daughters to pay her share of income to her surviving husband, if any, for life; and upon the death of any of his children leaving no surviving widow or husband, or the death of any surviving husband or the death or marriage of any such widow, to pay or transfer a proportional share of the principal sum to the issue, if any, of his deceased son or daughter, and in the case of default of such issue at the time of such decease or marriage to pay or transfer such share to the heirs at law of such deceased son or daughter. *Held*, that surviving husbands of the testator's daughters who had died without issue, under Pub. Sts. c. 124, § 1, which was in force at the times of the deaths of their respective wives, were entitled to share each to the amount of $5,000 in

the remainders to the "heirs at law" of their wives, the enjoyment of which was postponed until the termination of their own life interests.

Where a will does not direct that the real estate of the testator shall be converted into personal property but gives to the trustees thereunder power to sell and convey the trust property and to make new investments, a fund resulting from a sale of real estate retains its original character until it reaches one who has the right to treat it as his own absolutely and for all purposes.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 29 and amended on October 10, 1905, by the trustees under the will of Thomas Whittemore for instructions as to the distribution of the property held by them under the residuary clause of that will which is described and quoted in the opinion.

The case was heard by *Braley*, J., who found certain facts which appear in substance in the opinion and reported the case for determination by the full court, such decree to be entered as justice and equity might require.

*Roland Gray*, for the trustees.

*E. M. Brooks*, for Josephine P. Thwing.

*J. P. Richardson & W. W. Hart*, for Malcolm McLoud.

*J. G. Palfrey*, for George L. Whittemore.

*C. A. Whittemore*, for George P. Gifford and others.

*R. F. Sturgis*, for Marion St. C. Whittemore and Charles S. Clark, her guardian.

*C. S. Ward*, for Anna E. Bowman.

*F. W. Knowlton*, for Thomas Whittemore.

SHELDON, J. Thomas Whittemore died on March 21, 1861, leaving a will, by the fifth clause of which he bequeathed all the residue of his estate to trustees in trust to pay the net income thereof to such of his children as should survive him, during their lives; and also upon the death of any of his sons " to pay to the widow or widows of such son or sons, if any, the respective shares of income which would have been paid to the deceased husband or husbands, if living; to wit, so long as she or they shall remain the widow or widows of such deceased : and upon the death of any of my daughters who shall survive me, to pay to the surviving husband or husbands of such deceased, if any, the respective shares of income which would have been paid to the deceased wife or wives if living: to wit, during the natural life or lives of such husband or husbands: and upon the

death of any of my sons leaving no widow, or of any of my daughters leaving no husband or of any husband of any of my daughters, who shall survive such daughter, and upon the death or marriage of any widow of any of my sons, such share of the principal sum and estate so held in trust, as shall be proportional to the income that would have been paid to such deceased son, daughter, daughter's husband or son's widow shall be paid or transferred to the issue if any of such deceased son or daughter : and in default of such issue at the time of such decease or marriage, the same shall be paid or transferred to the respective heirs at law of such my deceased son or daughter: and this provision shall take effect, both in the case of such issue, and in the case of default of such issue at the time of such decease or marriage, whether such decease or marriage take place after my own death or before: . . . And I hereby empower my said trustees and their successors, to sell and convey any or all of said trust property : discharged of the trusts, and without obligation upon the purchasers to see to the application of the purchase money : and the proceeds shall be held upon the same trusts."

The testator left surviving him a widow, who has since died, and eight children : John M. Whittemore, Thomas Whittemore, Benjamin B. Whittemore, Abby E. Ruggles, Lydia A. Lucas, Joseph Whittemore, Lovice C. Cowles, and Eliza A. Gifford. All these children have now died, the first named in November, 1861, and the others at various dates since that time, some leaving only a widow or husband, some leaving only issue, and some leaving both issue and a widow or husband. The trustees have distributed according to the terms of the will four of the eight shares which made up the trust fund, being the shares which became divisible by the death of the children and their surviving husbands or wives before 1904 ; one share is still held for the benefit of the widow of a son of the testator for her life or widowhood ; all the life interests in the other three shares of the trust fund created by the will have now come to an end ; and the plaintiffs, who are the present trustees under the will, ask that they may be instructed to what persons and in what proportions they should distribute these three shares.

The defendants Josephine P. Thwing and McLoud contend

that the remainders which are attempted to be created by the residuary clause of the will in question are all invalid on the ground of remoteness under the rule against perpetuities, and especially that the gifts over upon the death or remarriage of the surviving husbands or wives of the testator's children are so invalid, both in the event of there being issue of the children surviving at the time of such death or remarriage and in the event of there being no issue surviving at that time, and that the residue of the testator's estate must now, after the death of all his children, be taken to be undisposed of by his will, and must go to the persons who now represent those who were his heirs at law or next of kin at the time of his death. Mrs. Thwing also contends that she is in no way precluded from asserting her full rights by the distributions that have been made of the four shares of which the income was payable to John M. and Thomas Whittemore and Mrs. Ruggles and Mrs. Gifford, or by the allowance of the trustees' accounts which showed such distributions. She contends that she is entitled to a common law dower interest in her husband's share of this residue, so far as it consisted of real estate, and to the personal property, to the amount of $5,000 and to one half of the excess above $10,000. She also claims that if the whole will is valid, she was yet one of the heirs at law of her deceased husband, John M. Whittemore, a son of the testator; that on her remarriage one eighth of the residuary principal was payable to his heirs, and that of this one eighth share she was entitled to have her dower in the real estate, and her distributive share in the personalty. The defendants Wellington and McLoud contend that past distributions, whether erroneous or not, cannot now be inquired into or taken into account, and that their intestates Lucas and Cowles are entitled each to the share of his deceased wife either as her devisee and legatee or as her statutory heir and next of kin, whether the limitations made by the residuary clause of the will in question were valid or invalid. The defendant Wellington also contends that if these limitations were valid Cowles was entitled in the right of his deceased wife to participate in the distribution of the shares of which Mrs. Lucas had received the income, when the right to this distribution accrued on the death of Mrs. Lucas in 1904. In the event of some of these contentions

being sustained, it will also be material to determine whether the fund in the hands of the trustees is to be regarded wholly as personal estate, or whether that part of the fund which consists of the proceeds of real estate sold on or before April, 1898, is still to be treated as real estate.

We see no ground for the contention that the limitations in remainder immediately after the life estates given to the testator's children are too remote. Of necessity the children of the testator who survived him must all be in existence at the time of his death; and their life estates must all expire within the limit of lives then in being. It is settled that an interest is not obnoxious to the rule against perpetuities if it begins within the prescribed period, although it may extend beyond that limit. Gray, Rule against Perpetuities, (2d ed.) § 232, and cases there cited. The life estates given to the surviving husbands or wives of the testator's children are therefore valid. And we are of opinion that the limitation of the principal sum of a share to the issue of his children who should die leaving no husband or wife is also valid. The remainder to the issue of his children is given upon two alternatives, first upon the death of his children respectively without leaving any surviving husband or wife, and secondly upon the death of any surviving husband or the death or remarriage of any surviving widow. If we assume for the sake of the argument that the remainder limited upon the latter event is to go only to the issue in existence at that later time, is merely contingent and comes (as in that case it might come) within the rule against perpetuities, yet the remainder limited upon the former event, a wholly distinct and separate event, would be valid. Gray, Rule against Perpetuities, §§ 341 *et seq.* *Stone* v. *Bradlee,* 183 Mass. 165. *Seaver* v. *Fitzgerald,* 141 Mass. 401. *Jackson* v. *Phillips,* 14 Allen, 539, 572. This is not the case of a limitation expressed to be made upon one double contingency or upon the happening of two events which the testator has not separated, but one in which the testator has himself made the distinction and separation between the two different events, either one of which, if it occurs, will exclude the existence of the other. *Miles* v. *Harford,* 12 Ch. D. 691. *Monypenny* v. *Dering,* 2 DeG., M. & G. 145. *Leake* v. *Robinson,* 2 Meriv. 363. It is true, no doubt, that where the testator has made only one contingency, though

depending upon a twofold event, the courts will not split this up into two contingencies, one good and one bad, and sustain the limitation on the ground that only the good contingency has taken place.  *Proctor* v. *Bishop of Bath*, 2 H. Bl. 358.  *In re Harvey*, 39 Ch. D. 289.  *Hancock* v. *Austin*, [1902] A. C. 14.  But this is not such a case.  And see the decisions cited in 22 Am. & Eng. Encyc. of Law, (2d ed.) 708.  However it may be, therefore, in the cases of other children, we are clearly of opinion that the limitation to the issue of those of the testator's children who should die without leaving a husband or wife surviving her or him was valid.  It follows accordingly that the limitations to the issue of Thomas Whittemore and of Eliza A. Gifford were valid, and the distributions of the shares of the trust fund of which they had respectively received the income were properly made by the trustees to their issue in accordance with the terms of the will.

But it is contended that the life estates given to the surviving husbands or wives of the testator's children might go beyond the measure established by the rule against perpetuities, of a life or lives in being and twenty-one years thereafter; for one of his children might marry a person not in being at the time of his decease, and such person might be the survivor of the marriage; so that remainders which could take effect only upon the death or remarriage of any such surviving husbands or wives might not become vested within the necessary period.  *Sears* v. *Russell*, 8 Gray, 86.  *Lett* v. *Randall*, 3 Sm. & G. 83.  *Goodier* v. *Johnson*, 18 Ch. D. 441.  Undoubtedly this is true.  And, as was said in the leading case of *Brattle Square Church* v. *Grant*, 3 Gray, 142, 152, 153, quoted and followed in *Sears* v. *Putnam*, 102 Mass. 5, 7, " in order to test the legality of a limitation, it is not sufficient that it be capable of taking effect within the prescribed period; it must be so framed as *ex necessitate* to take effect, if at all, within that time."  As has been stated, a remainder that could not become vested until the death or remarriage of the surviving husbands or wives of the testator's children might by possibility not take effect until after the expiration of the prescribed period, and so could not be sustained.  Gray, Rule against Perpetuities, (2d ed.) § 214, and cases there cited.  Remainders, however, that should appear to be so limited

as necessarily to vest in interest within the period limited by the rule would be valid, even though the actual payment and transfer to the beneficiary, the right to actual possession and enjoyment, might be postponed to a later period. *Stone* v. *Forbes*, 189 Mass. 163, 172. *Loring* v. *Blake*, 98 Mass. 253, 259. *In re Appleby*, [1903] 1 Ch. 565. *Christie* v. *Gosling*, L. R. 1 H. L. 279. *Wainwright* v. *Miller*, [1897] 2 Ch. 255. *In re Roberts*, 19 Ch. D. 520. Accordingly it becomes material to determine whether the interests here given in remainder were vested or contingent.

This question must be settled upon the fair construction of the language used by the testator, so as to ascertain and carry out the intent shown by the words he has used. *Crapo* v. *Price*, 190 Mass. 317. *Pearks* v. *Moseley*, 5 App. Cas. 714, 719. That language has already been quoted and need not be repeated. It is in substance a direction to his trustees upon the death of any of his sons to pay his (the son's) share of income to his widow, if any, during her widowhood; and upon the death of any of his daughters, to pay her share of income to her surviving husband, if any, for life; and upon the death of any of his children leaving no surviving widow or husband, or the death of any surviving husband or the death or marriage of any such widow, to pay or transfer a proportional share of the principal sum to the issue, if any, of his deceased son or daughter, and in the case of default of such issue at the time of such decease or marriage, to pay or transfer such share to the heirs at law of such deceased son or daughter.

It has been argued that the words " in the case of default of such issue at the time of such decease or marriage " can refer only to the death of a child unmarried or of a surviving husband or the death or remarriage of a surviving wife; but we are of opinion that these words have a somewhat broader signification and must be taken to refer also to the death of a child of the testator whether or not leaving a surviving husband or wife. It follows accordingly that the final limitation to the heirs at law of the respective children of the testator is also made to depend upon either one of two separate and distinct events, first, the failure of issue at the death of the child himself, and secondly, the failure of issue at the death or marriage of the

child's surviving husband or wife. That is, this part of the will must be read as if the words used had been, "and in default of such issue at the time of the decease of my sons or daughters respectively, or of the decease of the surviving husband of any of my daughters, or of the decease or marriage of the widow of any of my sons, the same [share of the trust fund] shall be paid or transferred to the respective heirs at law of such my deceased son or daughter." Manifestly this is a limitation upon the happening of either one of the alternative events, which have been separated and distinguished by the testator himself. See the cases cited *supra.* The first of these events must happen, if at all, within the necessary limit of time ; and it actually has so happened in the cases of John M. Whittemore, a son, and Mrs. Lucas and Mrs. Cowles, daughters of the testator, each one of whom has died, leaving respectively a wife or a husband, but no issue. In each of these cases, we are of opinion that the limitation to the heirs at law of the deceased child took effect and became vested upon the decease of that child, though subject in each case to be postponed as to actual possession and enjoyment until the termination by death or marriage of the life estate given to the surviving husband or wife. The doctrine was declared in this Commonwealth in *Loring* v. *Blake*, 98 Mass. 253. In the case of John M. Whittemore, the life estate of his widow came to an end in 1863 by her remarriage ; in the cases of Mrs. Lucas and Mrs. Cowles, they came to an end respectively in 1904 and 1905, by the deaths of Edmund G. Lucas and John E. Cowles. Accordingly, the share of which John M. Whittemore, and after his death until her remarriage, Josephine P. Thwing received the income was properly distributed by the then trustees to his heirs at law in accordance with the directions of the will; and the shares of which Mrs. Cowles and after her death John E. Cowles, and of Mrs. Lucas and after her death Edmund G. Lucas, received the income should now be distributed among the heirs at law of Mrs. Lucas and Mrs. Cowles respectively.

Three of the testator's children, Benjamin B. Whittemore, Joseph Whittemore and Mrs. Ruggles, died, each leaving issue and also a surviving wife or husband. In each of these cases it remains to be determined whether the issue took at or before the death of their parent vested interests in proportionate shares of

the fund, or whether their remainders were contingent only, and could not become vested until the subsequent death of the surviving husband or wife of their respective parents. If the remainders to the issue of these three children were vested before the death of their parent, or even if before that time they were contingent merely, but became vested upon the deaths of their respective parents, then it is evident, both as a matter of sound reason and upon the authorities heretofore cited, that their interests not only did in fact vest, but of necessity must vest, before the period fixed by the rule against perpetuities, i. e. a life or lives in being and twenty-one years thereafter, could expire. In that event, it would not be necessary to determine whether the further limitation to the heirs at law of these children upon a failure of issue at the subsequent death or marriage of their surviving husbands or wives could take effect otherwise than by way of executory devise divesting the absolute interests that would already have become vested in such issue in favor of the heirs at law of their ancestor, and whether it would not thus be obnoxious to the rule against perpetuities and would have to be treated as void, or whether it could be maintained as a remainder vesting either at the death of the testator or at the respective deaths of these children. See as to this, besides other cases cited herein, *Loring* v. *Blake, ubi supra; Dove* v. *Torr,* 128 Mass. 38; *In re Hancock,* [1901] 1 Ch. 482. If the final limitation is valid, then *a fortiori* that which we are now considering must be sustained. If it is invalid, yet the rule is settled that an absolute bequest which once has vested in interest in the beneficiary will not be divested for the benefit of the testator's heirs at law merely because a subsequent limitation, which is intended to take effect either as an executory devise or by reducing in the contingency named the absolute interest previously given to a base fee, must fail of effect. *Goodier* v. *Johnson,* 18 Ch. D. 441. As was said in *Lovering* v. *Worthington,* 106 Mass. 86, 88, "the general rule is, that, if a limitation over is void for remoteness, it places all prior gifts in the same situation as if the devise over had been wholly omitted. If the prior gift was in fee, the estate is vested in the first taker discharged of the limitation over; if for life, it takes effect as a life estate." *Sears* v. *Putnam,* 102 Mass.

5. In the case at bar, the gift to the issue of these children, if

a vested interest, is absolute, or in fee. If the final limitation over to the children's heirs at law was valid, yet it has not taken effect, for there was no failure of issue on the death of the surviving husband or wife; if the final limitation is invalid, it is simply to be disregarded, and the issue retain the absolute estate which has once vested in them. *Brattle Square Church* v. *Grant*, 3 Gray, 142, 156. Accordingly, if by the proper construction of the will the remainders to the issue of the three last mentioned children of the testator became vested interests either before or at the respective deaths of those children, then the further limitation to the heirs at law is simply to be disregarded, and the estates given to the issue remain absolute. Nor need we consider whether the issue of these children, each one of whom left a surviving husband or wife, took vested remainders before the deaths of their parents; for it is enough here if such remainders became vested at the time of such deaths. If Joseph Whittemore's son, John St. Clair Whittemore, who died before his father, had such a vested interest, then upon his death leaving a daughter, his interest passed to and became vested in her. *Lee* v. *Welch*, 163 Mass. 312. *Jackson* v. *Jackson*, 153 Mass. 374. *Hills* v. *Barnard*, 152 Mass. 67. *Hall* v. *Hall*, 140 Mass. 267. *Campbell* v. *Stokes*, 142 N. Y. 23. The issue take *per stirpes. Coates* v. *Burton*, 191 Mass. 180. *Daggett* v. *Slack*, 8 Met. 450.

Did then the issue of these children take vested remainders, at any rate upon the decease of their respective parents? It is a general rule of construction that when the language used by a testator is of doubtful import remainders will preferably be regarded as vested, unless a contrary intention is to be gathered from the provisions of the will. *Minot* v. *Purrington*, 190 Mass. 336. *Bosworth* v. *Stockbridge*, 189 Mass. 266, and cases there cited. *Knowlton* v. *Sanderson*, 141 Mass. 323. *Minot* v. *Harris*, 132 Mass. 528, 529. *Dingley* v. *Dingley*, 5 Mass. 535, 537. As was said by Knowlton, C. J. in *Bosworth* v. *Stockbridge*, *ubi supra*, "*Hale* v. *Hobson*, 167 Mass. 397, *Harding* v. *Harding*, 174 Mass. 268, and other cases relied upon by some of the respondents, are not departures from this rule; but they are cases in which the court found, in the will, evidence of a clear intention that the estate should not vest until the death of the life ten-

ant." And it is to be observed that all the limitations here in question are to the direct descendants of the testator ; a circumstance which has been deemed to warrant the inference that vested rather than contingent remainders were intended to be created. *Gibbens* v. *Gibbens*, 140 Mass. 102, 104. *Stanwood* v. *Stanwood*, 179 Mass. 223. *Bancroft* v. *Fitch*, 164 Mass. 401. The rule is the stronger when the remainders limited would be void for remoteness if held to be contingent. *Loring* v. *Blake*, 98 Mass. 253, 260. *Seaver* v. *Fitzgerald*, 141 Mass. 401. *In re Turney*, [1899] 2 Ch. 739, 747. *St. John* v. *Dann*, 66 Conn. 401. *Post* v. *Hover*, 33 N. Y. 593. *McBride's estate*, 152 Penn. St. 192. A somewhat strained construction has sometimes been adopted for this purpose. *Taylor* v. *Frobisher*, 5 DeG. & Sm. 191. *Berkeley* v. *Swinburne*, 16 Sim. 275. But apart from any such general rule of construction we think it manifest that the intention of this testator was that the issue of his children should take a fixed and vested interest, at least at the time of the decease of their respective parents. *Otis* v. *McLellan*, 13 Allen, 339. It was expressly held in that case upon a limitation to issue postponed in actual payment in substantially the same manner as in the case before us until the death of any surviving husband or wife, that the right of the issue vested in interest upon the death of the children of the testator, subject only to the life estate of any surviving husband or wife in the income. The mere fact that the actual payment and transfer to the issue is not to be made until the expiration of the previous life estate is not enough to control this intent. *Otis* v. *McLellan*, *ubi supra*. *Evans* v. *Walker*, 3 Ch. D. 211. *Wainwright* v. *Miller*, [1897] 2 Ch. 255. *Siddall's estate*, 180 Penn. St. 127.

Accordingly we are of opinion that the remainders severally limited to the issue of Benjamin B. Whittemore, Joseph Whittemore and Abby E. Ruggles vested in such issue at the decease of their parents, though the right of present possession was postponed in each case until the expiration of an intervening life estate. *Lombard* v. *Willis*, 147 Mass. 13. *Pike* v. *Stephenson*, 99 Mass. 188. *Bowditch* v. *Andrew*, 8 Allen, 339. Not only is this construction in accord with the manifest intent of the testator and effectual to accomplish the object which he had in

view, but the opposite construction " would defeat that purpose, by creating a perpetuity which the law would not sustain. In such a case, the court is bound to adopt that construction which will sustain the will and effectuate the objects of the testator." *Loring* v. *Blake*, 98 Mass. 253, 260. *Galland* v. *Leonard*, 1 Swanst. 161. *O'Mahoney* v. *Burdett*, L. R. 7 H. L. 388. In the cases in which the life estate has now terminated, the plaintiffs are therefore to be instructed that distribution is to be made to the issue of the testator's children, if any.

It has been argued in behalf of Mrs. Thwing that the distributions which were made by the then trustees upon her remarriage and the deaths of Thomas Whittemore, Otis T. Ruggles and Eliza Gifford of the four shares to the income of which they had respectively been entitled were erroneously made; but it has been found by the single justice before whom this case was heard that these distributions were all made in accordance with the directions of the will. It results from what already has been said that these distributions were properly made. Mrs. Thwing could have had no dower or interest in the nature of dower in real estate of which her husband had in his lifetime no present estate of inheritance. " A widow is not entitled. to dower in a vested remainder. *Eldredge* v. *Forrestal*, 7 Mass. 253. *Brooks* v. *Everett*, 13 Allen, 457." C. Allen, J. in *Watson* v. *Watson*, 150 Mass. 84, 85. She cannot as dowress be regarded as an heir of her husband. *Proctor* v. *Clark*, 154 Mass. 45, 50. Nor has she the rights of a distributee, under the limitations of this will. *Fabens* v. *Fabens*, 141 Mass. 395, 399. *Olney* v. *Lovering*, 167 Mass. 446. Her deceased husband of course could not be an heir at law of his brothers and sisters who survived him. Even if Mrs. Thwing's rights had been disregarded in these distributions, it would be at least difficult to say that any errors in them could now be corrected, after they have been allowed by decrees of the Probate Court, which are found to have been made after proper notice. See *Minot* v. *Purrington*, 190 Mass. 336, and cases there cited. Nor is it necessary to consider how far any of the parties objecting to these distributions, which appear to have been made respectively in 1863, 1872, 1877, and 1898, are barred by laches from now raising objections to them, after having acquiesced in them since the

times stated.  *Lindsey* v. *Fabens*, 189 Mass. 329.  *In re Whittemore*, 157 Mass. 46.  *Wagner* v. *Baird*, 7 How. 234.

It is necessary also to determine who are the persons entitled to take under the designation " heirs at law " of deceased children.  In each of the cases in which such heirs take under the limitations of this will, they are necessarily to be determined at the death of the particular child in question.  *Dove* v. *Torr*, 128 Mass. 38.  *Proctor* v. *Clark*, 154 Mass. 45.  *International Trust Co.* v. *Williams*, 183 Mass. 173.  It is because the limitation in their favor must take effect at that time that its validity has been sustained in what has been said heretofore.  And we think it manifest that by these words, in the connection in which they are used, the testator intended to designate those who under the law of this Commonwealth would inherit the real estate of the person whom they represent.  This case comes under the rule of *Clarke* v. *Cordis*, 4 Allen, 466, and *Lombard* v. *Boyden*, 5 Allen, 249, in which it was held that where real and personal estate are included in a single provision, by which the income is to be paid to life tenants, and at the expiration of the life estates the trustees are to pay and transfer the whole property to the legal heirs either of the testator or of one of the life tenants, there being no indication that more than one class is intended or that the two kinds of property are to go in different directions, the whole property will go to those who are technically described as heirs.  *Welch* v. *Brimmer*, 169 Mass. 204.  *Olney* v. *Lovering*, 167 Mass. 446, 448.  *Proctor* v. *Clark*, 154 Mass. 45.  *Lincoln* v. *Perry*, 149 Mass. 368.  *Fabens* v. *Fabens*, 141 Mass. 395.  *Merrill* v. *Preston*, 135 Mass. 451.  *Rand* v. *Sanger*, 115 Mass. 124, 128.  *Holbrook* v. *Harrington*, 16 Gray, 102, 104.  *Daggett* v. *Slack*, 8 Met. 450, 453.  An apparently stronger statement of this doctrine in *Loring* v. *Thorndike*, 5 Allen, 257, turns upon the evident intention of the testator.  In the cases in which, under somewhat similar circumstances, the word " heirs " has been construed to have other than its common law meaning, so as to include those who would take personal property, either alone or together with heirs strictly so called, it generally will be found either that the fund consisted wholly of personal property, or that any real estate included therein was directed by the testator to be converted into personal property, or that

the decision turned upon what was found to be the particular intention of the testator. *Lawrence* v. *Crane*, 158 Mass. 392. *Kendall* v. *Gleason*, 152 Mass. 457. *White* v. *Stanfield*, 146 Mass. 424. *Sweet* v. *Dutton*, 109 Mass. 589. *Houghton* v. *Kendall*, 7 Allen, 72, 76. And in many of these cases the general rule which we have stated is fully recognized in the opinion of the court. See for example the language of Allen, J. in *Lawrence* v. *Crane, ubi supra*, at p. 393. This, in the contingency which has occurred, was a substantive gift to the heirs of these children of something which their parents were in no event to take; the circumstances are almost the same as those which existed in *Fabens* v. *Fabens, ubi supra*, and the principle laid down in that case must be followed here.

The shares now to be distributed are those of which the income was paid to Mrs. Lucas, Mrs. Cowles, and Joseph Whittemore. In each of these cases the income has until recently been paid to a surviving husband or wife; but these life estates have now ended. Joseph Whittemore left issue, and nothing need be added to what has been said concerning the distribution of that share. But Mrs. Lucas and Mrs. Cowles left no issue; and these shares are now to be paid and distributed to their heirs at law; and in each case the representative of her deceased husband claims to be entitled to a portion of the fund on the ground that he was a statutory heir of his deceased wife.

By the law of this Commonwealth, both in 1885 and in 1895, the respective times of the decease of Mrs. Lucas and Mrs. Cowles, a husband surviving his wife who left no issue took her real estate in fee to the amount of $5,000. Pub. Sts. c. 124, § 1. It has been held that this right is sufficient to entitle him, up to this amount, to property devised to his wife's heirs at law, unless a contrary intent is shown by the will. *Olney* v. *Lovering*, 167 Mass. 446. *Proctor* v. *Clark*, 154 Mass. 45, 49. *Lincoln* v. *Perry*, 149 Mass. 368. *Lavery* v. *Egan*, 143 Mass. 389. Nor is the mere fact that the surviving husband was given a life estate by the will sufficient to prevent him from taking also as one of the remaindermen. *Smith* v. *Smith*, 186 Mass. 138. *Cushman* v. *Arnold*, 185 Mass. 165. *Chesman* v. *Cummings*, 142 Mass. 65, 70. But this general rule cannot prevail against

the plain intention of the testator as shown by the language of his will, and it has been argued that it does appear by this will that he did not intend the surviving husbands or wives of his children to take as their heirs at law. It is contended that the whole scheme of the will was to provide for the testator's direct descendants, by giving finally the share set apart for the benefit of each child to his issue, if any, and otherwise to the other descendants of the testator as the child's heirs at law ; that it conclusively appears that he intended to give to their surviving husbands or wives merely a life estate; that he dealt alike with widow and surviving husbands, and that he could not have intended that a son's widow who should remarry and thereby terminate her life estate should at once become entitled to a large part of the fund at the expense of his own descendants. And it is urged that the same considerations apply with no less force to a construction which would divert, at any rate in part, the fund set aside for the heirs at law of his daughters to the estates of their deceased husbands who had happened to survive them, so that, after the decease of such husbands, his bounty would go to strangers in blood, perhaps not even known to him, although the only beneficiaries whom he had designated were the issue or heirs at law of his own children, whom he naturally would expect to be either his immediate descendants or near kinsmen. Accordingly it is contended that he intended to determine indeed the heirs at law of each child at the time of such child's decease, but to exclude any surviving husband or wife from that class, and to restrict any benefit which they were to take to the life estates which were expressly given to them. See *Pierce* v. *Knight*, 182 Mass. 72; *Heard* v. *Read*, 169 Mass. 216 ; *Welch* v. *Brimmer*, 169 Mass. 204, 211, 212, and cases there cited.

The question is not free from difficulty; but upon the language of this will the arguments which have been stated do not seem to us to be convincing. It does not appear that the general scheme of the testator was, in all the contingencies which he contemplated, to limit his bounty to his own descendants. He was content, upon the death of any of his children without issue, that the share apportioned for the benefit of such child should go, not to his own heirs at law, but to those of the child. He must have had in mind that those heirs were to be ascertained at the

death of such child, and must have recognized the fact that it would be impossible to foretell who those heirs would be. Even under the limitation to the issue of his children it might well have happened that shortly after his own death one or more of the shares into which his residue was to be divided would have gone to entire strangers. If his son John had left issue, the remainder in one share would have vested in them, subject only to the life estate of their mother. If they had died before the remarriage of their mother, she would have been their heir under the statutes then in force. Gen. Sts. c. 91, § 1. In 1863, accordingly, if these not impossible events had occurred, one full share of the trust fund would have become the absolute property of Mrs. Thwing, and would pass upon her death to those who might be entitled then to claim under her, presumably entire strangers to the blood of the testator; and this within little more than two years after his own decease. The fact that similar results may follow the limitation to his children's heirs at law will not justify us in applying by construction a restriction to these words which he did not choose himself to apply. We cannot override his plain words upon the strength of an imagined general intent which he has neither expressed nor manifestly implied, and which would be at variance with the language which he has used. Accordingly we are of opinion that the surviving husbands of Mrs. Lucas and Mrs. Cowles respectively became entitled as heirs at law to the shares of their respective wives to the extent of $5,000 in amount. Nor do we think it material whether either or both of these husbands have hitherto received anything from the estates of their deceased wives. The bequests to the heirs at law of these children designate not only the persons who are to take, but also the amount and proportions in which they are to take; that is, under Pub. Sts. c. 124, § 1, the husband to the extent of $5,000, and under Pub. Sts. c. 125, § 1, cl. 5, the surviving brothers and sisters and the issue of those who are dead to the rest of the share. See *Cummings* v. *Cummings*, 146 Mass. 501, 507; *Rand* v. *Sanger*, 115 Mass. 124, 128; *Holbrook* v. *Harrington*, 16 Gray, 102, 104; *Daggett* v. *Slack*, 8 Met. 450, 453; *Lawrence* v. *Crane*, *Proctor* v. *Clark*, and *Lavery* v. *Egan*, *ubi supra*. The right of these husbands is established by the fact that they are included under

the term " heirs at law " as used by the testator. They take directly from the testator; they do not inherit from their respective wives a share of the estates in remainder held by the latter; and the cases of *Watson* v. *Watson*, 150 Mass. 84, *Baker* v. *Baker*, 167 Mass. 575, and *Hill* v. *Pike*, 174 Mass. 582, relied upon by the defendants having interests adverse to theirs, are not applicable.

It remains to be determined whether the proceeds of real estate originally held in the trust fund, but sold and changed into personal property by the trustees before April, 1898, in accordance with the power given to them by the will, should be treated as real estate. It is to be observed that the will does not direct that the real estate be converted into personal, but simply gives the trustees power to sell and convey and to make new investments; and this has been already found to be a circumstance of weight in determining the construction of the words " heirs at law." If the conversion had been directed by the testator, or if he had contemplated the making of such a conversion before the taking effect of his final limitations, the proceeds of the real estate would be treated as personal property. *Lawrence* v. *Crane*, 158 Mass. 392, 393. *Hammond* v. *Putnam*, 110 Mass. 232, 237. But where as here there is a mere power to change investments, the fund resulting from a sale of real estate retains its original character until it reaches one who has the right to treat it as his own absolutely and for all purposes. *Hovey* v. *Dary*, 154 Mass. 7. *Holland* v. *Adams*, 3 Gray, 188, 191. *Holland* v. *Cruft*, 3 Gray, 162. Accordingly we are of opinion that the proceeds of the realty originally forming part of the trust estate are to be treated as realty in making distribution of the trust fund until the final vesting of the right to them in the parties ultimately entitled. Whether this can be done more conveniently by specifically following out the different investments which have been made, or, as has been suggested by counsel for one of the defendants, by having the share of any deceased issue or heir at law that is undisposed of by will go to his heirs and to his administrator in the ratio which the real estate belonging to the share originally bore to the personalty, is a practical question with which we do not need to deal.

Mrs. Lucas died in 1885. Her heirs at law were her husband;

her surviving brother and sisters: Joseph Whittemore, Mrs. Cowles and Mrs. Gifford; the children of her deceased brother Thomas: Thomas Whittemore and George L. Whittemore; the children of her deceased brother Benjamin: John, Charles, Otis, Benjamin and Frank Whittemore; and the daughter of her deceased sister Mrs. Ruggles, Josephine P. Harrington. Out of the share of which the income was originally paid to Mrs. Lucas, accordingly, the sum of $5,000 is first to be paid to the executor of the will of her deceased husband. The residue of this share is to be divided into six parts. The first of these parts vested on the death of Mrs. Lucas, subject to the life estate of her husband, in the children of her brother Thomas. One half of this part is now to go to George L. Whittemore; the other half part was finally vested in Thomas Whittemore the younger, and apparently passed by his will, upon his death in 1890, to his widow, Winifred L. Whittemore; and upon her death intestate in 1898, the right to receive this half part passed to the defendant Dyer, the administrator of her estate, and should now be paid to him accordingly. The second part is to be paid in equal shares to the children of Benjamin B. Whittemore; the third part to the daughter of Mrs. Ruggles. The fourth part became vested in Joseph Whittemore, and has now passed by his will and that of his widow to his son Thomas; and he is now entitled to receive this share. The fifth part became vested in Mrs. Cowles, and upon her death in 1895 was a part of her estate; and the plaintiffs must determine whether they can safely pay it over to the persons entitled as her heirs or distributees, or whether an administrator of her estate must be appointed. *Heard* v. *Read*, 169 Mass. 216, 220. The sixth part vested in Mrs. Gifford, and upon her death in 1898 passed to her children George P. Gifford and Anna E. Bowman, subject to the same considerations, as already stated.

Mrs. Cowles died on June 8, 1895. Her heirs at law were her husband; her surviving sister Mrs. Gifford; the children of her deceased brothers Thomas, Benjamin B. and Joseph; and the children of her deceased sister Mrs. Ruggles. Her share accordingly became vested to the extent of $5,000 in her husband, John E. Cowles; one fifth part of the residue in Mrs. Gifford; and one fifth part in the children respectively above

named; and payments should be made accordingly. It is unnecessary to go further into detail, as the same principles are to be applied which have been fully stated in dealing with the case of Mrs. Lucas.

The plaintiffs are to be instructed that the share of which Joseph Whittemore originally received the income is now to go to his issue, and the shares of which the income was paid to Mrs. Lucas and Mrs. Cowles are to be divided among their respective legal heirs above stated.

*So ordered.*