EDWARD S. RAND & another, administrators, *vs.* CAROLINE SANGER & others.

Suffolk. March 31. — April 28, 1874. AMES & DEVENS, JJ., absent.

A testatrix bequeathed the residue of her estate "to be equally divided among those persons who shall be my legal heirs at the time of my decease." The next paragraph in the will was: "And in the distribution of the said residue among my heirs, I desire and direct that the children of my sisters " A. and B. " shall share the same equally; that is, that it be divided among them numerically or *per capita*, and not *per stirpes*, and that the offspring of any deceased child of theirs only take by right of representation, or the share that the parent of such offspring would take if living." The legal heirs of the testatrix were her sister B. and two children of her sister A. There were also then living seven children of B. *Held*, that B. took one half of the residue and the two children of A. the other half.

BILL IN EQUITY by Edward S. Rand and Warren Sanger, administrators with the will annexed of Sarah Louise Hubbell, praying for instructions as to the distribution of the rest and residue of the estate of the said testatrix; and that the defendants might be decreed to interplead. The case was reserved for the consideration of the full court, by *Ames*, J., upon the bill, answers and report. From these it appeared that:

The testatrix by her will, after sundry legacies and bequests, by the forty-second article thereof disposed of all the rest and residue of her estate in the words following: " All the rest and residue of my estate, real, personal or mixed, of which I shall die

seised and possessed, or to which I shall be entitled at the time of my decease, I give, devise and bequeath to be equally divided among those persons who shall be my legal heirs at the time of my decease, excepting my son John H. Hubbell; and this exception is made only for the reason that at my decease he will come into the possession of his father's estate, which will be ample for all his wants.

" And in the distribution of the said residue among my heirs, I desire and direct that the children of my sisters Mrs. Anne Smith and Mrs. Caroline Sanger shall share the same equally; that is, that it be divided among them numerically or *per capita*, and not *per stirpes*, and that the offspring of any deceased child of theirs only take by right of representation, or the share that the parent of such offspring would take if living."

The testatrix left at her decease as her heirs at law her only surviving sister, Caroline Sanger; Cornelia Baird and Gerrit H. Smith, the children of her deceased sister Anne Smith, and John H. Hubbell, (called in the said will her son, meaning her stepson,) the only child of her deceased sister Jane Hubbell, who being expressly excluded from any share in the said rest and residue, was not made a party to this suit. At the decease of the testatrix there were living seven children of Caroline Sanger; namely, Anna L. Paddock, Mary J. Hearding, Mary W. Swinscoe, Caroline Campbell, Joseph P. Sanger, Henry P. Sanger and Fanny Davis. No change in the legal heirs or next of kin of the deceased took place between the date of the will, November 2, 1872, and her decease, September 10, 1873.

Caroline Sanger submitted her rights under the will to the decision of the court. Cornelia Baird and Gerrit H. Smith contended in their answers that the intention of the testatrix was to give the residue to those persons who should turn out to be her legal heirs at her decease by the statute of distributions, excluding her nephew John; and that they were the said Caroline Sanger and the said Caroline Baird and Gerrit H. Smith, and that the residue should be divided into three equal parts between the said Caroline Sanger, Cornelia Baird and Gerrit H. Smith; but that if the division was not to be made into three equal parts, to the three persons who were her legal heirs, (excluding John,) then it was to be made between them in the proportions provided

by the statute of distributions; namely, into two equal parts; one to the said Caroline Sanger, the other to the said Cornelia Baird and Gerrit H. Smith.

Anna L. Paddock and others, children of Caroline Sanger, contended that the testatrix by the forty-second article of her said will, intended that the residue of her estate therein disposed of should be equally divided between the children of her surviving sister Caroline Sanger, and of her deceased sister Anne Smith, each being entitled to and taking one ninth part.

*R. H. Dana, Jr.*, for Gerrit H. Smith and Cornelia Baird, was stopped by the court.

*H. W. Paine*, for the children of Mrs. Sanger. If the words "legal heirs" are to be taken in their strictly legal sense, it is manifest that the two clauses of the forty-second article are repugnant. The children of Mrs. Sanger were not the legal heirs of the testatrix at the time of her decease. They were not "entitled by descent and right of blood to her lands, tenements and hereditaments," as their mother was then living; but they are clearly distributees (to the exclusion of their mother) under the latter clause. It is difficult, if not impossible, to give effect to all the language of this article of the will, unless we suppose the testatrix to use the phrase "legal heirs" in its popular sense as synonymous with legatees. For unless she intended the children of her sisters to be the recipients of her bounty, the concluding clause of this article is utterly unmeaning. · In common parlance, the heir is one who takes by will, as well as one who takes by descent. It is often said that A. has made or proposes to make B. his heir. The word is used in its civil law sense, to indicate the person who succeeds to an estate either by devise or inheritance.

When a testator shows by the context of his will that he intends by the term "heir," to denote an individual who is not heir-general, his intention of course must prevail. Thus if a testator says, I make A. B. my heir, or, I give black acre to my heir male which is my brother A. B., this it seems is a good devise to A. B., though he is not heir-general. 2 Jarman on Wills, 19. See *Rose* v. *Rose*, 17 Ves. 347, where "my heir under this will," was held to point to the residuary legatee. The testatrix seems to have supposed that to carry out her intention it was necessary

to define the phrase "legal heirs." In § 25½ she gives her jewelry, bronzes and other articles of virtu to two of her nieces, "in trust and confidence that they shall make an impartial distribution of the same among my legal heirs, as defined in this will, equally, or as nearly so as they can." The attempt to define the phrase is found, if at all, in the 42d article. The testatrix had in her mind the objects of her bounty as a class, — her nephews and nieces, and studiously excluding her nephew, John H. Hubbell, she makes so many of them her legal heirs or legatees as shall be living at the time of her decease, and provides that the offspring of any deceased child shall take the share the deceased parent would take if living. This construction of the words "legal heirs" will harmonize the seemingly repugnant clauses of § 42. Having in her mind her nephew, John H. Hubbell, as one of the class of persons who are to be her "legal heirs," or legatees, to wit, her nephews and nieces, she is careful to exclude him. It may be contended that, as her sister Caroline might die before her or survive her, the testatrix meant to provide for either event; that she meant, if Caroline survived her, the residue should be divided into three equal parts, and that Caroline should have one, and each of the two children of Mrs. Smith should have one; that if Caroline died before her, the residue should be divided into nine equal parts, of which the children of Mrs. Smith should have two, and the children of Caroline seven, and that none but legal heirs should share in the residue. But it is not easy to discover any reason why in the one event the children of Mrs. Smith were to take two thirds, and in the other, were to take only two ninths. And "heirs" in the clause which directs an equal distribution among the children of the two sisters are manifestly the same persons "who shall be her legal heirs at the time of her decease." If the object of the two clauses was to provide for either event, none but legal heirs taking, that object was effectually secured by the first clause, and the latter clause was entirely superfluous and unmeaning. That the word legal heirs was not used in its strict technical meaning is shown by the fact that she contemplated that the children of a deceased nephew or niece should take, whereas such children could not be heirs if there were nephews and nieces living.

COLT, J.    The legatees under the residuary clause of Mrs. Hubbell's will are those persons who were her heirs at law at the time of her decease.

The first paragraph in that clause looks to the time of her death, and clearly declares that her heirs at law at that time shall, with the exception named, take as legatees.   Standing by itself it is complete and decisive as to the persons who are to take. In this respect it is the prominent and controlling provision. The second and remaining paragraph of that clause appears to be subordinate to it and not intended to change the distribution contemplated.   The purpose of the latter is to regulate the proportions in which certain persons shall take in the event of their becoming entitled to the estate under the first paragraph, and directs a departure from the proportions established by the statute if the contingency should arise.   It must yield to the leading provision so far as it is repugnant to it.

A devise to heirs designates not only the persons who are to take, but also the manner and proportions in which they take. Where there are no words to control, the law presumes the intention of the testator to be that they shall take as heirs would by the rules of descent.   This rule has been many times recognized by this court.   It is only necessary to cite a recent case, *Bassett* v. *Granger*, 100 Mass. 348.

In the case at bar it does not sufficiently appear from the terms of the will that it was the intention to use the words " my legal heirs " in any other than a strict legal sense, and the rule must be held to apply, in determining who are to take.

The general rule must also apply in determining the proportions in which the heirs shall take.   The expressions which are said to require a different division in this case are not, in our opinion, sufficiently clear and decisive to vary its application. Mrs. Sanger, the surviving sister of the testatrix, therefore takes one half, and the children of the deceased sister the other half of the residue.                              *Decree accordingly.*