WILLIAM C. QUINN *vs.* BENJAMIN HALL, JR., Trustee *et al.*

JULY 7, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)* *Wills. Trusts. Equity Pleading. Bills of Review. Original Bills in the Nature of Bills of Review. Equity. Bills in Nature of Bills of Review.*

A bill of review can be filed only by a party to the original cause or by one in privity with such party, and other persons aggrieved must proceed by original bill in the nature of a bill of review.

A bill impeaching a decree for fraud is an original bill in the nature of a bill of review.

The real nature of a bill in equity is to be determined by its substance rather than by its mere form.

*(2)* *Equity. Pleading. Laches.*

Where a trust fund was distributed, before complainant was informed of the proceedings taken to terminate the trust, delay arising from complainant's ignorance and also from original erroneous procedure by him in asserting his rights, could have worked no harm to the respondents and hence would not be a defence to a bill in the nature of a bill of review seeking to reverse the original decree as fraudulent.

*(3)* *Equity. Pleading. Fraud.*

Concealment of the fact in a prior bill, that complainant was the living husband of a beneficiary under a will, whereby it was made to appear to the court that the only parties in interest were those named in the original bill, and securing a decree in that bill by reason of such concealment constitute a sufficient allegation of fraud.

*(4)* *Equity. Venue.*

A bill in equity was brought and decree entered in Providence county. A bill in the nature of a bill of review attacking the decree, in which the complainant was a non-resident and the principal defendant was a resident of Newport county was filed in the latter county.

*Held,* that the bill was properly filed under Gen. Laws, cap. 283, § 2, and that if the prior decree should be set aside the decree in the latter suit might appear by way of a certified copy in the records of the county of Providence.

*(5)* *Wills. Trusts. "Inherit."*

Testamentary devise "I give, devise and bequeath to B in trust for C the sum of $5,000 and also the house and land where D formerly lived. To have and to hold the same to her the said B, her heirs, executors and administrators for the use and benefit of C, her heirs, executors and administrators, with power to manage the same generally and if need be in her opinion to sell the same and reinvest the proceeds thereof—and with power to convey said real estate to her, her heirs and assigns at any time when she may think proper and with power to pay over to her said money or any part thereof

according to her discretion." "In all cases where I have given property in trust for the use and benefit of other persons, and have not specially provided for its disposition on their decease, my will is that the trustee shall on such decease pay and convey the same in fee simple discharged of all trusts to the persons who by the laws of the State of Rhode Island would inherit it, had the persons for whose benefit it was so given died seized and possessed thereof in fee."

The trustee converted the real estate into money.

*Held,* that complainant as husband of the equitable life beneficiary was entitled to the balance of the trust estate.

*Held,* further, that the word "inherit" was not used in its technical sense, but as equivalent to "take" it being the intent of testator that the property should pass as the intestate property of C.

*(6)     Wills.     Construction.*

While words should be construed, in accordance with their technical meaning whenever possible, the court will adopt a broader interpretation whenever necessary to effectuate the intent of testator.

*(7)     Wills.     Construction.*

Where the estate to be divided is in the form of personalty the words "heirs" or "heirs-at-law" will be held to mean those entitled to succeed to personal estate in case of intestacy.

*(8)     Descent and Distribution.*

Gen. Laws, 1909, cap. 312, § 10, gives to a husband the exclusive right to the surplus of the personal estate of his deceased intestate wife, and it is immaterial that such provision is not contained in the statute of descent and distribution, so-called.

BAKER, J., dissenting.

BILL in nature of bill of review.     Heard on appeal of complainant and sustained.

PARKHURST, J.     This is an appeal from a final decree entered in the Superior Court in the above entitled cause. Said cause was heard in the Superior Court before the presiding justice, September 15, 1913, on the demurrers to the bill of complaint filed by Benjamin Hall, Jr., trustee, George Morton, Helen M. Morton and Hezekiah A. Cook, and upon hearing thereof said demurrers were sustained upon all points contained therein.     On September 27, 1913, a final decree was entered in said Superior Court sustaining said demurrers upon all points and dismissing said bill as to said respondents with costs.     Within the time prescribed by law, the complainant filed his claim of appeal from said final

decree, together with his reasons therefor, and thereupon the papers in said cause were certified to this court for determination of said appeal.

This is a bill in equity praying that the defendant, Benjamin Hall, as trustee under the will of Hezekiah Anthony, be required to account as said trustee, that said trust be terminated and that the balance of said estate be paid to this complainant who alleges his right to the surplus of said trust estate as surviving husband of the life beneficiary.

The essential allegations in said bill of complaint are as follows: That Hezekiah Anthony, late of the city of Providence, by his will duly admitted to probate January 22, 1884, provided in Section 17 thereof, as follows: "I give, devise and bequeath to Sarah Ann Cook, in trust for Helen Cook, widow of Enos A. Cook, the sum of five thousand dollars, and also the house and land where said Enos A. Cook formerly lived on Almy Street, in Fall River, Commonwealth of Massachusetts, to have and to hold the same to her the said Sarah Ann Cook, her heirs, executors and administrators for the use and benefit of Helen Cook, widow of Enos A. Cook, her heirs, executors and administrators with power to manage the same generally and if need be in her opinion to sell the same and reinvest the proceeds thereof and with power to change the investment thereof whenever in her opinion it shall seem best, and with power also to convey said real estate to her, her heirs and assigns at any time when she may think proper and with power to pay over to her said money or any part thereof according to her discretion."

The bill further sets forth that the will also provided in an unnumbered paragraph following Section 22nd as follows: "In all cases where I have given property in trust for the use and benefit of other persons, and have not specially provided for its disposition on their decease, my will is that the trustee holding such property shall on such decease pay and convey the same in fee simple discharged of all trusts to the persons who by the laws of the State of Rhode Island would inherit it had the persons for whose benefit it was so given died seized and possessed thereof in fee."

It is further alleged that said Sarah Ann Cook qualified as said trustee and sold the real estate in Fall River, the proceeds from said sale becoming a part of the trust fund; that the original trustee died September 7, 1888, and by a decree of the Appellate Division of the Supreme Court of the State of Rhode Island entered November 22, 1890, Hezekiah Anthony Cook was appointed trustee in her stead; that Hezekiah Anthony Cook died November 8, 1900, and by decree of said court entered October 14, 1901, Benjamin Hall, Jr., defendant in the present case was appointed trustee; that Helen Cook, the beneficiary under said trust, became the wife of the complainant, William C. Quinn, in September, 1905, and died intestate on April 3, 1911, said William C. Quinn being appointed as administrator of her estate.

The bill further alleges that on June 26, 1911, George Morton, Helen M. Morton, Frank Pierce, Sarah Pierce, Robert E. Maher, Hattie E. Maher, Hezekiah Anthony Cook, Jennie E. Cook, Hattie E. Cook, Stanley O. Holden, Nancy A. Holden and Reuben C. Small, brought a bill in equity, No. 2348, in the Superior Court of the State of Rhode Island, against Benjamin Hall, Jr., trustee, setting forth that said Joseph A. P. Cook, Helen M. Morton, Sarah A. Pierce, Hattie E. Maher, Hezekiah Anthony Cook, Jennie E. Cook and Nancy A. Holden were the sole heirs at law of said Helen Cook; that said trust had been fully completed and nothing further remained to be done in pursuance thereof and praying that "as there is no reason for the further continuance of said trust, a decree of this honorable court may be entered ordering the termination of said trust and a distribution of the trust funds among the several distributees to each one equal share, and further ordering the trustee discharged from further responsibility in the premises."

This bill further alleges with reference to the bill in equity, No. 2348, that said Benjamin Hall, Jr., respondent, therein waived issuance and service of subpœnas, admitted the allegations set forth in the bill of complaint, consented that the trust might be terminated, the trust fund be distri-

buted, and prayed that he be discharged from liability thereunder. Following the above proceedings, a decree was entered in said cause on July 10, 1911, by consent, empowering and directing the trustee to sell certain shares of stock owned by the estate and to pay the trust fund in equal shares to the above named parties, and declaring the trust terminated, and the trustee discharged.

The complainant in this bill further alleges that he had no knowledge of the pendency of the above proceedings and no knowledge of the existence of said trust; that, upon the discovery of the same, he diligently filed a request to file a bill of review in equity which was granted, and that on July 8, 1912, he filed a bill of review in equity, No. 2603, which bill has been discontinued and dismissed. The complainant further states in this bill that at the time of her decease, and at the time of the institution of said suit, and the entry of final decree therein, it was well known to the trustee and other parties therein that the said Helen Cook, the life beneficiary, was the wife of William C. Quinn; that none of the parties to said proceeding made known to the court that said Helen Cook left a husband surviving her and living at the time of the said proceedings; that the complainant did not know of the existence of said trust nor of the pendency of said proceedings, and was not made a party thereto, and that the decree entered was a fraud both upon the complainant and upon the court.

The bill concludes with a prayer that said decree be reviewed, reversed, set aside and declared to be fraudulent and void, that an account be taken, the trust terminated and that the complainant be declared entitled to the balance of the trust fund.

It appears that the bill as filed named fourteen several respondents, of whom eight were not residents of the State of Rhode Island; that those eight non-residents appeared specially and severally filed their pleas to the jurisdiction of the court, on the ground of non-residence; that these pleas were sustained by a judge of the Superior Court and the bill

was dismissed as to them; that of the remaining respondents, one was not served with process and entered no appearance; that there were consequently, five respondents left in the case. Three of these, namely, George Morton, Helen M. Morton and Hezekiah A. Cook, joined in a demurrer to the bill, stating their causes of demurrer as follows:

"FIRST. The complainant does not state a cause of action entitling him to relief.

"SECOND. It appears by said bill that the matters complained of, have been finally adjudicated by a court of competent jurisdiction.

"THIRD. It appears that the complainant's claims in said bill contained are stale.

"FOURTH. It appears that said bill was not brought within the time required by law.

"FIFTH. It does not appear in what county said cause in equity No. 2348 was brought.

"SIXTH. It appears that the complainant was not a party and was not a privy of a party to said cause in equity No. 2348.

"SEVENTH. It appears that the complainant was not a necessary party to said cause in equity No. 2348.

"EIGHTH. It does not appear that the complainant is entitled to any of the proceeds of said trust fund.

"NINTH. It does not appear that the complainant was aggrieved by the decree entered in said cause in equity No. 2348."

The respondent, Benjamin Hall, Jr., also demurred to the bill, on grounds which were substantially the same as those stated above. Both demurrers were heard before Mr. Justice Tanner on September 15, 1913, and a decision was announced sustaining the same on all points; and thereafter on September 27, 1913, a final decree was entered sustaining these demurrers upon all points and dismissing the bill; from this decree this appeal is taken, the reasons of appeal being set forth as follows:

1.   That said decree is against the law.

2.   That said decree is against the rights of the complainant as disclosed by the pleadings.

3.   That the court erred in sustaining the respondents' several demurrers to the bill of complaint and thereby deciding that the complainant was not entitled to the whole or any part of the trust fund therein described.

It is contended on behalf of the defendants that this is a bill of review; that therefore it should have been filed within one year after the entry of the final decree sought to be reviewed; and that being filed later, it cannot be sustained, citing *Williams* v. *Starkweather*, 24 R. I. 512, 25 R. I. 77, 28 R. I. 145; that it is not brought in the same county where the original decree was enrolled, and therefore cannot be sustained; that being a bill of review, and being brought by one who is neither a party nor the privy of a party to the original suit it cannot be sustained.   All these questions are raised under the grounds of demurrer, second to sixth, inclusive, above set forth, and must stand or fall together; they all depend upon the question whether this is a bill of review.   In our opinion, after careful consideration of the briefs and arguments of counsel, this is not a bill of review; it is an original bill in the nature of a bill of review.   It was long since held by this court in accord with well settled principles of equity procedure that a bill of review can be filed only by a party to the original cause or by one in privity with such party; and that "other persons aggrieved must proceed by original bill in the nature of a bill of review." *Doyle, Petitioner*, 14 R. I. 55, 56; and it is one of the chief grounds of complaint in this bill that this complainant was not made a party, although it was well known to the parties to said suit that the said Helen Cook named as a beneficiary in the will of Hezekiah Anthony had married the complainant and that he survived her; that by referring to said beneficiary by the name of Helen Cook, instead of by the name of Helen Cook Quinn, although knowing her to have married the complainant, and by neglecting to make this

complainant a party to said suit, the parties to said original suit deceived the court; and the bill further alleges that this complainant had no knowledge of the proceedings by the parties claiming as heirs-at-law of Helen Cook to have the trust terminated and the fund distributed, and had no knowledge of the existence of the trust; and that upon discovery thereof he proceeded diligently to take action. It further appears that he first sought leave to file a bill of review and did attempt to file such a bill, which was afterwards dismissed; evidently the complainant discovered that a bill of review was not the proper remedy for him, and therefore he proceeded to file this original bill in the nature of a bill of review. There is no ground for the claim set up by the defendants that this complainant has been guilty of laches in filing his bill. It appears that he proceeded with diligence as soon as he was informed of what had taken place; and although his first attempt to file a bill of review was ill advised, it must at least have operated to give prompt notice of his claim to the parties in interest. It further appears by certain pleas on file in the case that the trustee, Benjamin Hall, Jr., distributed the trust fund in said bill mentioned, under the decree entered in said cause on the 10th day of July, 1911, during said month of July, 1911, to the parties named in said decree; so that it was impossible for this complainant, not being informed of said proceedings, to have filed his bill before said fund was distributed. It therefore clearly appears that the delay arising from this complainant's ignorance, and incident to his procedure, could have worked no harm to the parties respondent; and would not be a valid ground of defence to this suit.

This bill is based upon allegations of fraudulent concealment of the fact that this complainant was the living husband of the beneficiary, Helen Cook, named in Hezekiah Anthony's will, whereby it was made to appear to the court that the only parties in interest were the parties named in the original bill, and that the decree for termination of the trust and distribution of the fund was obtained by reason of such fraudulent concealment.

The above facts constitute a complete and sufficient allegation of fraud in procuring the decree in the original suit. It was the duty of the trustee to fully advise the court as to all material facts affecting the distribution of the estate upon the determination of the trust.

(3) "It is incumbent upon the trustee to satisfy himself beyond doubt, before he parts with the possession of the property, *who* are the parties legally and equitably entitled to it." Lewin on Trusts, 12th Ed. 402.

Likewise in instances of the distribution of a trust estate through court proceedings, it is stated that "Whether the trustee be plaintiff or defendant, he should take care before an order is made, that all proper parties are before the court, for if the trustee fail in his duty to point out the proper parties, it might be held that the order of the court under such circumstances did not indemnify him." Lewin on Trusts, 12th Ed. 422. See, also, Perry on Trusts, 6th Ed., § 924; Story Eq. Pl. 10th Ed., § 427.

In Story on Equity Pleadings, 10th Ed., § 426, the author says: "There is no doubt of the jurisdiction of courts of equity to grant relief against a former decree, where the same has been obtained by fraud and imposition; for these will infect judgments at law and decrees of all courts; but they annul the whole in the consideration of courts of equity." . . . Where a decree has been so obtained, the court will restore the parties to their former situation, whatever their rights may be." See, also, to the same general effect, Kerr on Fraud and Mistake, p. 293; Fletcher Eq. Pleading, p. 1005.

A bill impeaching a decree for fraud is an original bill in the nature of a bill of review.

The nature of the bill necessary to obtain relief in cases of this kind is defined in Story's Equity Pleading, 10th Ed., § 426, as follows: "Fourthly; bills impeaching decrees for fraud. A bill of this sort is an original bill in the nature of a bill of review. There is no doubt of the jurisdiction of courts of equity to grant relief against a former decree,

where the same has been obtained by fraud and imposition; for these will infect judgments at law and decrees of all courts, but they annul the whole in the consideration of courts of equity. This must be done by original bill."

So in 3 Encyc. Pl. & Pr. 608, it is stated as follows: "It is a well settled rule of equity jurisprudence that where a decree has been obtained by fraud or collusion between the parties it may be impeached by an original bill filed for that purpose."

The rule is stated in Daniell's Chancery Pleading & Practice, 6th Am. Ed., Vol. II, p. *1584, as follows:

"If a decree has been obtained by fraud, it may be impeached by original bill, without the leave of the court; the fraud used in obtaining the decree being the principal point in issue, and necessary to be established by proof, before the propriety of the decree can be investigated."

A bill to impeach a decree for fraud is an original bill in the nature of a bill of review. *Mussel* v. *Morgan*, 3 Bro. Ch. 74; *Ex Parte Smith*, 34 Ala. 455; *Person* v. *Nevitt*, 32 Miss. 180; *Seguin* v. *Maverick*, 24 Texas, 526. So in cases where, as in the case at bar, the decree is obtained without making the persons parties to the suit whose rights are affected, such decree is void as to those parties, and the remedy is an original bill in the nature of a bill of review.

In *Dunklin* v. *Harvey*, 56 Ala. 177, it was held that a decree in chancery was fraudulent and void as to persons who were not made parties to the suit and whose rights were known to be involved, and that an original bill in the nature of a bill of review, is the proper mode by which to impeach such decree for fraud, at the instance of a stranger to the original suit.

So in *Bailey* v. *Holden*, 50 Vt. 14, it was held that a person whose rights had been prejudiced by a decree in a suit to which he was not a party and as to the pendency of which he had no knowledge, might impeach said decree by an original bill for fraud. The real nature of the bill is to be determined by its substance rather than by its mere form.

It has been suggested by the defendants that the use of the word "review" in the the prayer of the present bill of complaint and the application to a justice for leave to file the bill, renders it a bill of review and hence subject to the one year limitation. While the use of the word might equally point to the fact of its being an original bill in the nature of a bill of review, nevertheless under the authorities no doubt can arise.

In *Ex Parte Smith*, 34 Ala. 455, the court said: "The real nature of a bill is to be determined rather by its substance —that is, by its allegations and object—than by the title which the pleader chooses to give it. The bill in this case is called by the complainant, a bill of review. It is obvious, however, that it is not a bill of review, for that cannot be filed, except upon the ground of error on the face of the decree or of new matter which has arisen or been discovered since the publication of testimony in the original suit. Nor is it what is termed a supplemental bill in the nature of a bill of review, for this also is founded upon the occurrence or discovery of new facts. The object of the bill is to impeach a final decree for fraud; and this can only be done by an original bill filed for that purpose. Such a bill is sometimes called an original bill in the nature of a bill of review.

In *Berdanatti* v. *Sexton*, 2 Tenn. Ch. 704, the essential difference between a bill of review and an original bill in the nature of a bill of review is aptly stated as follows: "The object and effect of a bill for fraud, even if the fraud consist of want of notice, are to vacate the former decree *in toto*, not to retry the cause; whereas the object and effect of a bill of review are to reverse the decree, so far as it is erroneous, and to retry the cause upon the original record, or the original and new proof, according as the bill is for error apparent or newly discovered evidence."

In *Gordon* v. *Ross*, 63 Ala. 363, 365, the court said: "The objects and effect of a bill of review, and a bill impeaching a decree for fraud, are essentially different." . . . "If entertained as a bill of review, the former decree, so far as

erroneous, would be reversed, and the court would proceed to retry the cause, rendering the decree the evidence would authorize. But, if fraud has infected the decree, it must be vacated entirely—there is no retrial of the cause."

One point raised by defendant's demurrers is that this bill is not brought in the proper county. It appears upon inspection of the papers on file that the original suit, in which the decree was entered ordering distribution of the trust fund and which said decree is now attacked by this suit, and sought to be set aside, was brought in the Superior Court in the County of Providence; and that the bill in this cause was filed in the Superior Court in the County of Newport. We think this is quite immaterial. By the Court and Practice Act, under which the Superior Court was created, Chapter 2, § 4, provides "There shall be a Superior Court which shall consist of a presiding justice and five associate justices." (Gen. Laws, 1909, Chap. 273, § 1.) Further sections of the same and other chapters provide for the holding of sessions of the Superior Court by a single justice in one or more places at the same time, and at stated times in the different counties of the state, and this is for the convenience of litigants. But as was said in *Paull* v. *Paull*, 30 R. I. 253, 256, "In this State the Superior Court is one court for the entire State." The various sessions in the several counties are held by the same justices; and it is customary for equity causes filed in one county to be heard in another for convenience of the court or parties. In fact it appears that the hearing of this cause, although filed in Newport County, was actually had in Providence, where the original suit was filed. Inasmuch as the complainant in this suit was a non-resident and the principal defendant, Benjamin Hall, Jr., trustee, was a resident of Newport County, this bill was properly filed in Newport County under the provisions of Gen. Laws, R. I., 1909, Chap. 283, § 2. If the decree attacked in this suit is set aside, there is no difficulty in making such an order as shall cause the decree in this suit to appear by way of a certified copy in the records of the County of Providence, so

as to effectually nullify the decree entered in said County of Providence.

The sole further question of importance in this case is whether the complainant has by the allegations of his bill shown that he has an interest in the disposition of the trust fund formerly held by the defendant, Benjamin Hall, Jr., as trustee for complainant's deceased wife. At the outset, under the will of Hezekiah Anthony, the trust estate consisted of $5,000, and of a house and land in Fall River, Massachusetts. Under the will the trustee was authorized to convert the said house and land into money and reinvest the proceeds. It appears that this conversion was made by the original trustee, and that thereafter and down to the death of the said Helen Cook Quinn, the trust fund consisted solely of money or other personal property and was such at the time when it was finally distributed under the decree of July 10, 1911.

The will of Hezekiah Anthony has been construed in *Cook v. Dyer*, 17 R. I. 90, wherein it was held that under the provisions of the seventeenth and twenty-second clauses of the will, Helen Cook took an equitable life estate and that upon her decease the property would pass under the last portion of the twenty-second clause of the will. The question as to the parties entitled to take upon the termination of the equitable life estate was not before the court nor considered by it, and is now, for the first time presented for determination.

The contention of the complainant is, that as husband of the life beneficiary, he is entitled to take the entire balance of the trust estate.

The last part of the twenty-second clause of the will is as follows: "In all cases where I have given property in trust for the use and benefit of other persons, and have not specially provided for its disposition on their decease my will is that the trustee holding such property shall on such decease pay and convey the same in fee simple discharged of all trusts to the persons who by the laws of the State of Rhode Island would inherit it had the persons for whose benefit it was so given died seized and possessed thereof in fee."

The substantial question involved is the determination of the testator's intent as to the disposition of the trust estate after the death of Helen Cook. The respondents contend that the word "inherit" should be construed in its technical signification, so that the heirs-at-law as such are entitled to the final distribution of the trust fund, and that the complainant is barred from taking at the death of his wife. An examination of the will, however, shows that the word "inherit" was not used in any such sense, but rather as equivalent to "take," it being the intent of the testator that the property should pass as the intestate property of Helen Cook.

(6) It may be admitted that in its strictest technical sense the word "inherit" means to take as an heir-at-law, by descent. While words are to be construed according to their technical meaning whenever possible, nevertheless, the courts have not hesitated to adopt a broader interpretation whenever necessary to effectuate the intent of the testator. Especially is this true in the case of the word "inherit" which is very commonly used to describe some method aside from descent, by which property is taken on one's death.

In *Dohn's Exc.* v. *Dohn*, 110 Ky. 884, it was held that the word "inherit" as used in a clause in the will which, after providing that the estate shall be divided in single parts among children or their heirs, provides that the issue of the children dying shall inherit the share of the parent, is not used as a word of limitation to indicate that the issue of the dead child shall take from and through the parent and not from a testator, but loosely in lieu of "take," the court saying (p. 898,) "Indeed, it seems probable that the word inherit is loosely used in lieu of take as frequently occurs in wills."

In *Kohl* v. *Frederick*, 115 Iowa, 517, the word "inherit" as used in an antenuptial agreement, evidenced by a writing made after the marriage between the husband and wife, both of whom had children by a former marriage, that neither of the parties should inherit any claim, right or interest in

or to any estate of the other, will not be used in its strict technical sense, but in the sense of "take" or "have" and thus the wife was excluded from taking a dower interest in the husband's estate.

In *Graham* v. *Knowles*, 140 Pa. St. 325, the court construed a will wherein the testatrix devised and bequeathed, "all my estate, both real and personal, that I shall inherit as my portion after my father's death." The court held that "the word 'inherit' was not used in a technical sense, but that it often means 'to become possessed of' and in that sense was doubtless employed by the testatrix."

In *Hill* v. *Giles*, 201 Pa. St. 215, it was held that the words "shall be inherited by," were used as the equivalent of "go to" or "be received by."

So in *Harris* v. *Dyer*, 18 R. I. 540, this court held that the word "inherit" as there used in a will would not be used in its strict sense of taking by descent, but merely as equivalent to "take."

It is evident from the will itself that the testator did not use the word "inherit," in its technical legal significance as denoting the passing of title to real property by descent, and that the prima facie presumption as to the meaning of the word is rebutted by the actual intent of the testator as shown by the internal evidence of the will itself.

The general character of the will does not tend to strengthen any presumption that the words are used in a technical sense. As pointed out by this court in *Cook* v. *Dyer*, 17 R. I. 90, this particular will was not drafted in a precise or careful manner, nor with regard to the careful use of words, supposed to be used in a technical sense. Thus the court points out with reference to clauses seventeen and twenty-two of the will, that "The two clauses, instead of coalescing, exhibit an irreconcilable repugnancy, owing to the words of inheritance and representation that are added to said Helen's name," and further, "the clause indicates that the testator used the words 'heirs, executors, and administrators,' very indefinitely, and that, at any rate, he did not regard them as

words by which the disposition of the trust estates was specially provided for after the decease of the persons for whose benefit they were the more immediately given."

The failure to use words in their strict technical sense, is apparent from an examination of the twenty-second clause in connection with the seventeenth clause of the will. The testator uses the word "inherit" which the respondents claim is used to denote the class who would take title to real property by descent from Helen Cook. It is evident that the testator by this twenty-second clause intended to provide a method for complete disposition of the trust property upon the termination of the life estate. Even at the inception of the trust, said estate consisted in part of personal property, and as to this part, and the accumulations of rents and profits from the real estate, the word "inherit" would have no strict application since no one would "inherit" the personalty, the same passing to the next of kin, or to the surviving husband. Furthermore, the testator by vesting in the trustee an express power to sell the real estate contemplated the conversion of the realty into personalty during the life of the life tenant, in which case the word "inherit" would have no technical applicability. As a matter of fact, as shown by the allegations of the bill, the power of sale was exercised by the trustee during the life time of the life beneficiary and the trust property at the time of her decease had been actually and entirely converted into personalty in the form of cash and securities.

That the testator contemplated that the trust estate would be personalty either in whole or in part, at the time of the death of Helen Cook, is shown by the direction that upon such decease, the trustee holding such property shall "pay" and "convey." Obviously the word "pay" can have no application other than to personalty as to which the word "inherit" in its strictest legal sense is without significance.

It is an established rule of construction that where the estate to be divided is in the form of personalty the words "heirs" or "heirs-at-law" shall be held to mean those entitled to succeed to personal estate in case of intestacy.

Thus in *Lawrence* v. *Crane*, 158 Mass. 392, the will provided "When my estate shall finally be disposed of by my said trustees, or the survivor of them, and all collections made that can be made, then my said trustees, or the survivor of them, shall dispose of the net proceeds in their hands by dividing the same among my heirs-at-law as provided for by the laws of the Commonwealth of Massachusetts." The court said: "When it is contemplated that real estate shall be changed into money before going to the heirs-at-law, then those words are held to mean those entitled to succeed to personal estate in case of intestacy."

In *Kendall* v. *Gleason*, 152 Mass. 457, the court said: "On the death of Stillman A. Gleason the trust terminated as to his share, which then immediately became payable 'to his legal heirs.' The will contemplated a change of the real estate to personal property in the hands of the trustees, and that it should go to the heirs in the form of personal property. The words 'legal heirs' must, therefore, be construed to mean those who would take personal property under the statute of distribution."

So in *Houghton* v. *Kendall*, 7 Allen, 72, it was held that where the word "heirs" is used in a gift of personalty it should primarily be held to refer, not to those who would take realty by descent, but to those who would be entitled to take intestate estate of the person whose "heirs" they are called.

The inference as to the intent of the testator in these cases is aptly stated in *White* v. *Stansfield*, 146 Mass. 424, 436, as follows: "Where a testator establishes a fund consisting of personal property for the purpose of providing an income for life for his son, and this is apparently his principal object, and when after his son's decease he directs it to be paid over to the son's 'heirs-at-law,' his intention is not so much to make a bequest of it, or direct further how it shall go, as it is to surrender the disposition of the fund, as if it were actually the son's, to those upon whom the law would in such case devolve it."

In regard to these cases last above cited it is to be noted that in *Lawrence* v. *Crane*, *Kendall* v. *Gleason, and* *White* v. *Stansfield, supra,* where the words "heirs-at-law" were used, it was nevertheless held that not only the next of kin under the statute of distributions, but also the "widow, as a person entitled under the statute" would be entitled to share in the fund to be distributed.

For other cases where the word "heirs," used in a will relating to the disposition of personal property, has been held to mean those entitled under statutes of distribution as in case of intestacy, and including widows; see *Wright* v. *Methodist Church,* 1 Hoff. Ch. N. Y. 202, 212; *Freeman* v. *Knight,* 37 N. C. 72; *Hascall* v. *Cox,* 49 Mich. 435; *Corbitt* v. *Corbitt,* 54 N. C. 114; *Kiser* v. *Kiser,* 55 N. C. 28; *Eddings* v. *Long,* 10 Ala. 203; *Jacobs* v. *Prescott,* 102 Me. 63; *Trenton Trust, &c., Co.* v. *Donnelly,* 65 N. J. Eq. 119; *West's Estate,* 214 Pa. St. 35.

It has likewise been repeatedly held that, under a settlement in trust or a will disposing of personal property, using the word "heirs," the husband of a beneficiary is entitled to the wife's interest as in case of intestacy, where the statute gives him the right to her intestate property or a portion thereof; *Sweet* v. *Dutton,* 109 Mass. 589. "In cases where the word 'heirs' in deed or will has been construed to mean distributees of personal property under the statute of distributions, and that statute has given the whole or a part of the personal property of a deceased husband or wife to the wife or the husband, they have taken the property in the same manner as under the statute." *Lavery* v. *Egan,* 143 Mass. 389, 393. See, also, *Lincoln* v. *Perry,* 149 Mass. 368, 374; *International Trust Co.* v. *Williams,* 183 Mass. 173; *Gray* v. *Whittemore,* 192 Mass. 367, 381-383; *Eby's Appeal,* 84 Pa. St. 241, 246; *Turner* v. *Burr,* 141 Mich. 106, 110.

The language used by the testator at the conclusion of the twenty-second clause of the will, and which has already been decided to be applicable to the final disposition of the trust fund held for the benefit of Helen Cook (Quinn),

(see *Cook* v. *Dyer, supra*), is as follows: "In all cases where I have given property in trust for the use and benefit of other persons and have not specially provided for its disposition on their decease my will is that the trustee holding such property shall on such decease pay and convey the same in fee simple discharged of all trusts to the persons who by the laws of the State of Rhode Island would inherit it had the persons for whose benefit it was so given died seized and possessed thereof in fee."

The trust fund, as above shown, was all personal property, the real estate originally included therein having been lawfully converted into personal estate by the first trustee long before the death of the beneficiary and so remaining. The above quoted language plainly shows the testator's intention that the trust fund should, after the death of Helen Cook Quinn, be paid over to the persons who would take the same had Mrs. Quinn been possessed of the fund in her own right at the time of her decease, had she died intestate.

Gen. Laws of R. I., 1909, Chap. 312, § 10, provides as follows: "Sec. 10. Administration of the estate of a person dying intestate shall be granted as follows:"—  .  .  . "*Second.* If the deceased was a married woman, to her husband, if competent, who shall not be compelled to distribute the surplus of the personal estate, after payment of her debts, but shall be entitled to retain the same for his own use."

(8)     Substantially the same statute was in force at the time of the making of testator's will and of the probate thereof, and has continued in force ever since. (Pub. Stat. R. I., 1882, Chap. 184, Sec. 7.) This statute was considered in *Kenyon* v. *Saunders*, 18 R. I. 590, and was held to be a reënactment of the Statute of 29 Charles II, and to be declaratory of the common law rule, that "Under the common law the personal estate of the wife became the husband's and on her death he could administer on her estate and retain the surplus after paying her funeral charges; and if another administered he held the surplus as trustee for the husband;" the only changes brought about by subsequent legislation being

power in the wife to dispose of her personal estate by will, and the liability of her estate for her debts. See, also, *Caswell* v. *Robinson*, 21 R. I. 193.

In view of these authorities it is beyond question that if Helen Cook Quinn had been possessed in her own right of this trust fund at the time of her death, it would have gone to her husband, the complainant in this case, under the statute above quoted; and that, under the terms of the will as above set forth, such must be deemed to have been the testator's intention. This statute gives to the husband the exclusive right to the surplus of the personal estate of his deceased intestate wife, and it is immaterial that such provision is not contained in the statute of descent and distribution, so-called. Careful examination of the briefs for the several defendants discloses nothing which in any wise tends to affect our opinion as above expressed as to any point discussed. We find that the Superior Court erred in sustaining the several demurrers to the bill and in dismissing the bill by the decree from which the appeal is taken. The complainant is entitled to the fund formerly held by the trustee, Benjamin Hall, Jr., for the benefit of Helen Cook Quinn, and should have been made a party to the original bill for the termination of the trust and for the disposition of the trust fund.

The decree appealed from is reversed; the complainant is entitled to the relief prayed for in his bill, and may present a decree for the approval of this court in accordance with this opinion.

BAKER, J., dissenting. I concur in the opinion of the majority of the court with the exception of that part thereof which construes the last part of the twenty-second clause of the will of Hezekiah Anthony in connection with the seventeenth clause thereof as they relate to the disposition of the trust estate created by the last named clause upon the death of Helen Quinn, formerly Helen Cook. Construction of the clause first named becomes necessary because no part

of the corpus of said trust estate was transferred to the life tenant during her life, as was possible by the terms of the said will.

The last part of the twenty-second clause of the will is quoted in the majority opinion and need not be here repeated.

The seventeenth clause is·as follows: "I give, devise, and bequeath to Sarah Ann Cook, in trust for Helen Cook, widow of Enos A. Cook, the sum of five thousand dollars, and also the house and land where said Enos A. Cook formerly lived, on Almy Street, in Fall River, Commonwealth of Massachusetts; to have and to hold the same to her, the said Sarah Ann Cook, her heirs, executors, and administrators, for the use and benefit of Helen Cook, widow of Enos A. Cook, her heirs, executors, and administrators, with power to manage the same generally, and, if need be in her opinion to sell the same and reinvest the proceeds thereof, and with power to change the investment thereof whenever in her opinion it shall seem best, and with power also to convey said real estate to her, her heirs and assigns, at any time when she may think proper, and with power to pay over to her said money or any part thereof, according to her discretion."

In *Cook* v. *Dyer*, 17 R. I. 90, this court in construing clause seventeen held that Helen Cook took an equitable life estate thereunder. The simple question of construction now presented is,—Who were the persons meant and pointed out as beneficiaries by the following words of the twenty-second clause, "my will is that the trustee holding such property shall on such decease pay and convey the same in fee simple, discharged of all trusts, to the persons who by the laws of the State of Rhode Island would inherit it had the persons for whose benefit it was so given died seized and possessed thereof in fee."

In construing a will the words should be given their ordinary and usual significance. But where technical words are used they are presumed to be used technically and they will be so construed unless a clear intention to the contrary is apparent from the context. 40 Cyc. 1396, 1398. The

word "inherit" is of course a technical word and used technically means "to take property by descent as an heir." Anderson Law Dict. The word "heir" is also a technical term, in strictness, meaning "one born in lawful matrimony who succeeds by descent and right of blood." *Richardson* v. *Martin*, 55 N. H. 47; or, as stated in *Richards* v. *Miller*, 62 Ill. 422, "an heir is one who inherits," showing that in the present case "the persons who" . . . "would inherit it" are identical in meaning with the word "heirs." Strictly speaking the words "inherit" and "heirs" are words used in respect to real estate only. It is unquestionably true, however, that courts have not hesitated to subordinate the language to the manifest intention of the testator and in so doing, if necessary, will give a secondary and untechnical meaning to technical terms. The words "inherit" and "heirs" have both been interpreted in a secondary and untechnical sense, the latter the more frequently than the former, because the occasions for its construction by courts have been the more numerous.

It is urged in the present case that the word "inherit" should not be interpreted technically, but in the sense of "take" or "have." The claim is based upon the fact that in the inception of the trust, part of the estate was personal property and as to this the word "inherit" would have no strict application since no one could inherit personalty. Attention is also called to the provision of the will authorizing the trustee to sell the real estate and that therefore the testator contemplated the conversion of realty into personalty during the life of the life tenant, in which case the word "inherit" would have no applicability in a technical sense, and that as a matter of fact the real estate had been converted into personalty when Helen Quinn, formerly Helen Cook, died. In other words, the complainant claims that the nature of the property disposed of shows that the testator, at the death of said Helen, did not intend to give it to her heirs, but to those entitled to take her personal estate upon her dying intestate.

The nature of the property disposed of is well recognized as something to be considered in interpreting wills when by fair construction a question has arisen as to what persons were entitled as beneficiaries by the language employed in the will to designate them.

Practically all the reported cases pertinent in the present case relate to the construction to be given to the word "heirs" when applied to real estate and personal estate included in the same gift. Under clause seventeen of Hezekiah Anthony's will, both real and personal estate, were given to the trustee and the words of clause twenty-second are applicable to the whole of such estate as might be in the trustee's possession and control at the time of the death of the life tenant.

The rule of interpretation applicable in such cases is stated in 1 Roper on Legacies, p. 93: "It being always a question of intention as to the meaning of the testator in the use of the word 'heirs,' if it appear that the intent was for the heir, properly and technically such, to take the personal estate, there can be no objection to his title. An instance of that intention may occur when a testator blends his real and personal estates together; and, after giving the fund to a person for life, directs that his next heir-at-law shall afterwards succeed to it. In this case, the intention that both estates should be enjoyed together is apparent, and to divide them by giving the one to the next of kin would be contrary to the words; consequently, a court of equity has no alternative but to adhere to the description in the will, and to permit the person answering that description, viz.: the heir-at-law, to enjoy the whole."

So in Kent's Com., Vol. IV, 537, note (12th ed. Holmes:) "But if real and personal estate be devised, after a life estate, to the heirs-at-law, both the next of kin and the heir-at-law cannot take, if it appears both descriptions of property were to go together; and then the heir will take the whole."

And in 2 Redfield on Wills, 63: "But where real and personal estate is blended in the same bequest, there seems an inconsistency in giving the word 'heir' or 'heirs' a

different import with reference to the different subject-matters combined in the same general disposition. This difficulty is referred to in some of the earlier cases. But the question was thoroughly reviewed, and all the cases bearing on this point considered, in the case of *De Beauvoir* v. *De Beauvoir*, and the rule fully established that in all such cases the word 'heir' or 'heirs' must receive its natural and ordinary import and construction.''

There are many decisions in support of this view. The leading English case is *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cas. 524. There a testator gave ''all my estate in the funds of England and all my said manors'' unto three persons in succession, and their sons successively in tail male, ''and for default of such issue I give and devise the same to my own right heirs forever.'' The Lord Chancellor, on page 550, says: ''That question is, who is the person to take? Till you ascertain who that person is, the only remaining question is, did this testator, or not, mean that the same persons who took the real estate should take the personal estate? It does not matter whether he is described as right heir, or whether he belongs to the class of legal right heirs, if he is the person and the only person who can take, supposing the real and personal property are to go together as a blended fund. The moment you ascertain that the heir-at-law, at the death of the testator, is the person entitled to the real estate, you ascertain at the same moment, assuming the intention, that the same person is to take the personal estate as *persona designata*'' and on page 552, he says: ''It is said that the effect of this construction will be to give to the two words two senses. It does no such thing. It gives to the right heir two descriptions of property, but in one sense. The fact that the testator's right heir is to take both properties, involves no difference of sense at all. One class of this property he does not take in the character of right heir, but, being the right heir, he takes it as a gift under this will. It is perfectly clear that, if the personal property is given to him expressly, he will take it. The words are not used

in two senses, but they are used in one sense, to carry both properties according to the intention." See, also, *Haslewood* v. *Green*, 28 Beav. 1; *Gwynne* v. *Muddock*, 14 Ves. 488, and *Smith* v. *Butcher*, 10 Ch. Div. 113. This rule of interpretation is adopted by the courts of last resort in many states. In *Allison* v. *Allison*, 101 Va. 537, the testator gave all the residue of his estate, real, personal and mixed to his executor in trust for a daughter during her natural life and at her death to be divided among her children should any survive her, but if she should die without issue or if her child or children should die before becoming of age "then the property bequeathed for the benefit of my daughter is to be divided among my heirs-at-law according to the laws of the State of Virginia." The estate was a large one and included real and personal estate. After considering the point at length as to the meaning of the words, "heirs-at-law" and discussing authorities, the court says: "We are content to accept the law as declared by the English Court of Chancery, the Supreme Court of Massachusetts and the eminent text-writers from whom we have quoted. We are, therefore, of opinion that, as the residuary clause of the will blends real and personal estate and gives it to the heirs-at-law of the testator, the persons answering that description should enjoy the whole, there being nothing to indicate a contrary intention on the part of the testator."

In *Mason* v. *Baily*, 6 Del. Ch. 129, the testator had divided the rest, residue and remainder of his estate, real, personal and mixed, whatsoever and wheresoever the same might be into six equal parts. He gave one of these equal one-sixth parts to S. "in trust to pay the dividends and rents accruing thereto" . . . "to her sister, my daughter, Ann Elizabeth Grimshaw, for and during the term of her natural life," and upon her death to convey the same as the said Ann might by her last will direct, and "on the failure of such last will or testament or instrument, then to convey the same to the right heirs of the said Ann Elizabeth Grimshaw, their heirs and assigns forever." The fourth item of

the will was as follows: "I authorize and empower my executors hereinafter named or the survivor of them, should it be deemed necessary, in making distribution of my estate according to this my will, to sell and convey any or all of my estate, either at public or private sale, for the best price that can be obtained, and deed or deeds in fee simple to the purchaser or purchasers thereof, or other conveyances or transfers to make, execute and deliver." There was no proof of the nature, character, and description of the property and estate of the testator at the date of his will. At his death he owned two burial lots and a considerable personal estate. The Chancellor considers the meaning of the words,"heir," "right heirs," and "heir-at-law" at great length in an elaborate opinion in which many cases are cited and discussed and says, p. 158: "There is nothing in the context or any part of the will to show that by the words 'right heirs' of his daughter he meant any other person or persons than those who were technically such," and "The question in this, as in every similar case, is this: Is the person described, described as *persona designata* or not? The question is, who is the person to take? It does not matter whether he is described as right heir, or whether he belongs to the class of legal right heirs, if he is the person and the only person who can take supposing the real and personal property are to go together as a blended fund." . . . "In all cases, whether the gift is immediate or in remainder; whether it is of personal estate or of a mixed fund of real and personal estate,—the question simply is whether there is such a description on the face of the will as amounts to a *designatio personœ* and enable you to give to a person not filling the character in which he would be entitled to take it by law the property which the testator bequeathed to him." Held, that the entire equal sixth part went to the heirs of said Ann. See, also, *Hackney* v. *Griffin,* 59 No. Car. 381, 383, and *Gordon* v. *Small,* 53 Md. 550, 561.

The rule of interpretation above set forth has been applied in Massachusetts in numerous cases, as for example, *Clarke*

v. *Cordis,* 4 Allen, 466; *Lombard* v. *Boyden,* 5 Allen, 249; *Fabens* v. *Fabens,* 141 Mass. 395; *Lincoln* v. *Perry,* 149 Mass. 368; *Proctor* v. *Clark,* 154 Mass. 45; *Olney* v. *Lovering,* 167 Mass. 446; *Heard* v. *Read,* 169 Mass. 216; *Rand* v. *Sanger,* 115 Mass. 124; *Holbrook* v. *Harrington,* 16 Gray, 102, and *Gray* v. *Whittemore,* 192 Mass. 367.

In *Lincoln* v. *Perry, supra,* the testator who was born and lived awhile in New Hampshire, but was domiciled in Massachusetts when he executed his will and thenceforth until his death in 1877, gave one-fourth part of the residue of his estate, consisting of personalty in Massachusetts and of land in New Hampshire, to his brother's wife who was domiciled in New Hampshire with her husband and there died in 1894, "to have and to hold the same to her during her life and at her decease to her heirs-at-law and their heirs and assigns forever." The plaintiff was appointed trustee under the will in each state. There was no power to sell given in the will. By proper authority the trustee sold, in 1881, the real estate in New Hampshire for three thousand dollars; the personal property in Massachusetts, amounting to thirty-five thousand dollars, had never been invested in real estate, and after 1881 the whole property in question had been personal property. The question was as to who was entitled to take the property in Massachusetts under the designation "heirs-at-law." The court said: "The testator has appointed a common destination for all of said fourth part of the residue of his property, whether the same is real or personal. The words should not be construed to mean that the real estate should go to one set of persons, and the personal estate to another; but the whole residue must go to the heirs, according to the meaning which that word bears at common law, namely, those who would be entitled to succeed to real estate in case of intestacy."

The rule applicable to these cases is stated in 40 Cyc. page 1464, as follows: "Where the gift consists of both real and personal estate, the word 'heirs' will ordinarily be construed as legal heirs or heirs-at-law as to the real estate, and

as next of kin or distributees as to the personal estate; but where the gift is directly to the heirs of a certain person as a substantive gift to them, and there is no indicaion that more than one class is intended or that the two kinds of property are to go in different directions, the whole property, both real and personal,will go to the heirs-at-law.'' In the note seven cases are cited as supportive of the statement that ''heirs will ordinarily be construed'' technically as to the realty and as next of kin or distributees as to the personalty. A careful examination of the seven cases cited shows that the decisions in four of them do not support the statement of the text. Three of the four, namely, *Fabens* v. *Fabens, Hackney* v. *Griffin, and Allison* v. *Allison,* are cited above. *Ingram* v. *Smith,* I Head (Tenn.), 411, relates only to personal property. Of the other three cases two are English cases, *Wingfield* v. *Wingfield,* 9 Ch. Div. 658, and *Keay* v. *Boulton,* 25 Ch. Div. 212, in the former of which real estate and personal property in trust was to be divided among ''brothers and sisters then living or their heirs,'' and in the latter case among children ''as may be then surviving or their heirs,'' in which the word ''heirs'' is held to have a two-fold meaning, namely, ''heir-at-law'' as to real estate and ''next of kin'' as regards the personalty. The distinction between these cases and the cases of which *De Beauvoir* v. *De Beauvoir* is a type is not readily obvious unless the distinction is based on the fact that in them the gift was substitutional or in succession and in the latter case it was substantive.

In *Howell* v. *Gifford,* 64 N. J. Eq., 180, which is the third case cited, there was a similar ruling where the will provided that if a child died without living issue him surviving the share of the deceased child was to be paid ''his heirs or legal representatives,'' the court plainly basing its decision upon the use of both terms ''heirs'' and ''legal representatives.'' In the latter case the executors were authorized to sell the realty, but were not required to do so. It is possible that other cases of this kind exist, but they are to be regarded as exceptional in face of the authorities already cited.

It is a well established rule of interpretation of wills as affected by the nature of the property that the word "heirs" as applied to personalty primarily means next of kin or those persons who would take under the statutes of distribution in case of intestacy. And this rule applies when the will directs realty to be sold and the proceeds paid to the heir. 40 Cyc. 1464. The reason of this rule as applicable to the proceeds of real estate sold is that the testator equitably converts the realty and plainly intends that it shall go to the beneficiaries as personalty. But this suggests a question as to what effect a power of sale given to a trustee, but optional with him as to its exercise, has upon the interpretation to be given the word "heirs" when realty and personalty are included in the gift and also as to what effect the exercise of the power converting realty to personalty will have. In the five Massachusettts cases, *supra*, namely, *Fabens* v. *Fabens, Olney* v. *Lovering, Heard* v. *Read, Proctor* v. *Clark,* and *Gray* v. *Whittemore,* the trustee was given power to sell real estate, but not directed to do so; and in two of the five cases considered, *Olney* v. *Lovering and Gray* v. *Whittemore,* the trustee exercised the power to sell and converted the realty into personalty; but in each case it was held that the entire property would go to the heirs and not to the distributees or next of kin.

These matters are very thoroughly considered in *Gray* v. *Whittemore, supra,* decided in 1906. The testator gave the residue of his property, consisting of real and personal estate to trustees who were to pay the income thereof to beneficiaries for life and at the expiration of the life interests they were to pay and transfer the whole property to the heirs-at-law of a deceased son or daughter. He also gave his trustees authority as follows: "And I hereby empower my said trustees and their successors, to sell and convey any or all of said trust property; discharged of the trusts, and without obligation upon the purchasers to see to the application of the purchase money; and the proceeds shall be held upon the same trusts." In determining who were the persons

entitled to take under the designation heirs-at-law of said deceased child, the court says: "It is necessary also to determine who are the persons entitled to take under the designation 'heirs-at-law' of deceased children." . . . "We think it manifest that by these words, in the connection in which they are used, the testator intended to designate those who under the law of this Commonwealth would inherit the real estate of the person whom they represent. This case comes under the rule of *Clarke* v. *Cordis*, 4 Allen, 466, and *Lombard* v. *Boyden*, 5 Allen, 249, in which it was held that where real and personal estate are included in a single provision, by which the income is to be paid to life tenants, and at the expiration of the life estates the trustees are to pay and transfer the whole property to the legal heirs either of the testator or of one of the life tenants, there being no indication that more than one class is intended or that the two kinds of property are to go in different directions, the whole property will go to those who are technically described as heirs." Numerous cases are cited. "In the cases in which, under somewhat similar circumstances, the word 'heirs' has been construed to have other than its common law meaning, so as to include those who would take personal property, either alone or together with heirs strictly so-called, it generally will be found either that the fund consisted wholly of personal property, or that any real estate included therein was directed by the testator to be converted into personal property, or that the decision turned upon what was found to be the particular intention of the testator." Five Massachusetts cases showing this are cited all of which are also cited in complainant's brief and in the majority opinion. The court further says: "It remains to be determined whether the proceeds of real estate originally held in the trust fund, but sold and changed into personal property by the trustees before April, 1898, in accordance with the power given to them by the will, should be treated as real estate. It is to be observed that the will does not direct that the real estate be converted into personal, but simply

gives the trustees power to sell and convey and to make new investments; and this has been already found to be a circumstance of weight in determining the construction of the words 'heirs-at-law.' If the conversion had been directed by the testator, or if he had contemplated the making of such a conversion before the taking effect of his final limitations, the proceeds of the real estate would be treated as personal property. But where as here there is a mere power to change investments, the fund resulting from a sale of real estate retains its original character until it reaches one who has the right to treat it as his own absolutely and for all purposes. Accordingly, we are of opinion that the proceeds of the realty originally forming part of the trust estate are to be treated as realty in making distribution of the trust fund until the final vesting of the right to them in the parties ultimately entitled." See, also, *Holland* v. *Cruft*, 3 Gray, 162; *Holland* v. *Adams*, 3 Gray, 188, and *Hovey* v. *Dary*, 154 Mass. 7.

In *Holland* v. *Cruft, supra,* Chief Justice Shaw says (p. 180): "The principle therefore appears to be fully settled, both upon well considered reasons of justice and expediency, and upon a series of authorities, that where land is devised as real estate, and either by the direction of the testator himself, or by operation of law, such real estate is converted into money for the purpose of better investment, or for any other purpose consistent with the design and purpose of the ultimate destination to which the real estate was appropriated, there the money is substituted for, and stands in the place of the devised real estate, and shall go to the same persons and in the same proportions, and vest in possession and enjoyment at the same times and upon the same contingencies, which would have affected the real estate, had it remained specifically in real estate."

In *Holland* v. *Adams, supra,* he also says (p. 191): "As a general rule to be deduced from the cases, we think that in case of such conversion of real into personal estate, to stand in place of the real, as more beneficial to the parties, without

changing the beneficial destination, the character thus impressed on the money will attach to it, until it reaches one who, if it had remained real estate, would take it beneficially."

In *Hovey* v. *Dary, supra,* the court says (p. 10): "Where executors or trustees are directed to convert real estate into personal, it will more readily be inferred that the proceeds of such realty are to be held as personal property than where power and authority merely are conferred upon the executors thus to change investments. In the former case the direction shows, or tends to show, that the testator has contemplated and understands the change that may be made in the rights of various parties by the change in the form of the property, while in the latter case it is less easy to suppose that he has confided to another the right and power to determine at his own discretion whether the descent or devolution of the property shall be changed by the new form which the property may assume by reason of the sale." See, also, *Scholle* v. *Scholle,* 113 N. Y. 261.

In *Rhode Island Hospital Trust Co.* v. *Harris,* 20 R. I. 408, where trustees were given a general power to sell and dispose of the trust estate at public auction or private sale and exercised the power by selling real estate, the court says: "We are of the opinion that as the real estate was sold by the trustees subsequently to the death of the widow, not in pursuance of any direction by the testator, but merely for the purposes of the trust, its proceeds are to be treated as real estate and are to be distributed among the persons who would have been interested in the real estate had it not been sold." See *Rhode Island Hospital Trust Co.* v. *Harris,* 20 R. I. 160, for terms of will and decision upholding validity of the sale of such real estate by the trustees.

All of the cases cited by the complainant in his brief as supportive of his claim are cases where the property disposed of was either personalty or realty expressly directed by the testator to be converted into personalty, or where the intention of the testator as to such conversion for the purpose of

final distribution was clear, although the conversion was not expressly ordered. No case is cited where the power to sell real estate by the trustee is optional and is simply a power to change investment, whether the power be exercised or not, which upholds the complainant's claim, and after a somewhat diligent search I have discovered none.

I therefore find no good ground in reason or authority for not following the rule set forth in *Gray* v. *Whittemore, supra.* In this case there is nothing to indicate that either by giving the trustee "power" . . . "if need be in her opinion, to sell the same and reinvest the proceeds thereof and with power to change the investment thereof whenever in her opinion it shall seem best," or by the exercise of such powers the testator intended to change the ultimate destination of the gift or that he intended to confide in the trustee the right and power to determine at her discretion whether the devolution of the property should be changed as a result of changing its form by the sale thereof. On the contrary, it seems the more reasonable to conclude that these powers "to sell and reinvest" and "to change the investment" whenever it might seem best to the trustee, which naturally includes the power to invest wholly in realty or wholly in personalty, or partly in each, were given simply for the purpose of enabling the trustee to manage the trust estate in the most beneficial manner. Under these conditions the words "persons who by the laws of the State of Rhode Island would inherit" should, in my judgment, be given their technical meaning as the equivalent of "heirs." To state it otherwise the words are used in their strict sense as *persona designata* to point out the beneficiaries of the gift. This interpretation is strengthed by the use of the words "pay and convey the same in fee simple" and the words "and the persons . . . dying seized and possessed thereof in fee." Of course by "the Statutes of Rhode Island" the complainant is not an heir of Helen Quinn and cannot inherit from her. Accordingly he takes nothing under the will of Hezekiah Anthony and has no interest in the property in

question.  On this ground the complainant's appeal from the decree of the Superior Court in sustaining the respondent's demurrers and in dismissing the bill should be denied and dismissed, and the cause be remanded to the Superior Court for the entry of a decree in accordance herewith.

*Crane, Munro* and *Barry, Thomas A. Barry,* for complainant.

*William G. Rowe,* of counsel.

*Irving Champlin, Alfred Wilson, Claude C. Ball,* for George and Helen M. Morton and Hezekiah A. Cook.

*John C. Knowles,* of counsel.

*Burdick and McLeod,* for Benjamin Hall, Jr., Trustee.